**W. J. BARRITT, Jr., as Executor of the Estate of Blanche I. Barritt, Deceased, Plaintiff,**

**v.**

**Laurie W. TOMLINSON, Director of Internal Revenue for the District of Florida, Defendant.**

**Civ. A. No. 2453.**

United States District Court, S. D. Florida, Tampa Division.

March 8, 1955.

Doyle E. Carlton, Michel G. Emmanuel, Mabry, Reaves, Carlton, Fields & Ward, Tampa, Fla., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Robert H. Weinstein, Sp. Assts. to the Atty. Gen., Richard M. Roberts, Atty., Dept. of Justice, Washington, D. C., James L. Guilmartin, U. S. Atty., Miami, Fla., for defendant.

WHITEHURST, District Judge.

This suit involves a claim by the executor of the estate of Blanche I. Barritt, deceased, against the Director of Internal Revenue for the District of Florida to recover deficiency assessments by the Commissioner against the estate of the deceased involving four separate determinations by the Commissioner, three of which are based upon a claim by the Commissioner that property dispositions made by the deceased during her lifetime were made in con-

templation of death. The remaining assessment was founded upon an interpretation by the Commissioner of the will of the deceased testator.

At a pre-trial conference, plaintiff's counsel presented a motion suggesting that the case involved certain pure questions of law which should be determined before trial under Rule 16, Fed.Rules Civ.Proc. 28 U.S.C.A., providing for consideration of "such other matters as may aid in the disposition of the action." Counsel respectively for the executor and Director have filed briefs, and that segment of the case in which no factual issue is involved and which should be determined as a matter of law, is now disposed of by this memorandum opinion.

### Facts

William J. Barritt, Sr., by will, devised his entire estate to his wife, Blanche I. Barritt, for the period of her natural life, and granted her certain powers pertaining to her management, investment and re-investment of the assets of his estate during her life tenancy. Upon her death the estate remaining passed to three children and two step-children of the testator. The pertinent language in the will is as follows:

"Second: All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate of which I may die seized or possessed or to which I may be entitled at the time of my decease, I give, devise and bequeath to my wife, Blanche I. Barritt, should she survive me: To Have And To Hold the same to her for the period of her natural life.

"Third: I hereby give my said wife full power and authority, in her discretion, to hold and retain any property coming to her under my will in the same form of investment as that in which it may exist at the time of my death; and I also give to my said wife full power and authority, in her discretion, to sell at private or public sale, and to lease and exchange, the whole or any part of such property, whether real or personal, at such prices and on such terms and conditions as to her may seem best, and to invest and reinvest the proceeds in such real or personal property of any kind or description as she, in her discretion, may deem in the best interest of said estate, although the same may not be of the character permitted for trustees' investment by the ordinary rules of law or under the laws of Florida, giving my said wife all the income from said estate absolutely and the right to use all or any part of the principal as she may see fit.

"Fourth: In the event my said wife, Blanche I. Barritt, does not survive me, and at the death of my said wife if she does survive me, I give, devise and bequeath all the said rest, residue and remainder of my estate to my step-son, J. D. Barritt, my step-daughter, Jane Barritt Anderson, my sons, W. J. Barritt, Jr. and Harvey M. Barritt, and my daughter, Edna Barritt Price, equally, share and share alike, one fifth to each, per stirpes and not per capita."

The testator died on March 9, 1944. An estate tax return was filed showing the assets left to Blanche I. Barritt for life as part of testator's gross estate, and the tax paid as computed on the return. On May 23, 1949, Blanche I. Barritt died and an estate tax return was timely filed on behalf of her estate, but the life estate left Mrs. Barritt by her husband was not included in her gross estate since it passed automatically to the five remaindermen under Mr. Barritt's will. Upon an examination and audit of the estate tax return filed on behalf of the estate of Blanche I. Barritt, the Commissioner of Internal Revenue determined that the words, "and the right to use all or any part of the principal as she may see fit", contained at the end of paragraph three of Mr. Barritt's will, was, in effect, a taxable power of appointment, in that Mrs. Barritt had un-

limited power to invade corpus for any purpose. The Commissioner based his determination on a definition of a power of appointment contained in Section 81.24(b) of the Estate Tax Regulations.

The executor of the estate of Blanche I. Barritt duly paid the deficiency thus assessed by the Commissioner, and timely filed a claim for refund, which was rejected. This suit was filed to recover the claimed over-payment of estate tax. Counsel have submitted two questions for determination. First, whether the decedent Blanche I. Barritt, who will hereafter be referred to as the donee, was at the date of her death, the donee of a general power of appointment created after October 21, 1942 under the last will and testament of William J. Barritt, Sr., deceased, within the meaning of Section 811(f) (2, 3) of the Internal Revenue Code of 1939 as amended by the Powers of Appointment Act of 1951, 26 U.S.C.A. § 811(f) (2, 3). Second, whether, if it be determined that the donee was the recipient of a general power of appointment, as the Commissioner claimed, that the estate tax applied by him thereto was retroactive under such circumstances as to make the tax arbitrary, capricious and erroneous under applicable decisions.

### Conclusions of Law

■■ The intent of the testator is to be drawn from the will, itself, and such intent is the controlling consideration. Mosgrove v. Mach, 133 Fla. 459, 182 So. 786. Cited cases do not furnish a definite guide in this case because of difference in expression of the wills involved. It seems clear, however, that it was Mr. Barritt's paramount purpose to insure his wife's support and maintenance during her lifetime. He bequeathed to her "all of the income from his estate absolutely" and to use all or any part of the principal coming to her under the will as she might see fit. This imports, it seems to the Court, a purpose on the part of the testator that should the income mentioned be insufficient to support his wife, then she might, if she saw fit, invade the principal or corpus of the estate to supplement her support and maintenance in so far as she deemed it necessary and on account of which she was not responsible to the remaindermen of the testament.

In Downing v. Johnson, 45 Tenn. 229, the gift by will was to the testator's wife of the whole estate "for and during her natural life, to be by her freely possessed and enjoyed", and "the balance * * * that may be on hand at the death of my wife, I dispose of in the following manner", etc. Personal property was involved. It was held that this created a life estate in the wife, with power to consume such as she may deem proper for her support and maintenance, and a remainder in the second takers. It was said that a court might restrain fraudulent and extravagant waste by the life tenant. In Lewis v. Pitman, 101 Mo. 281, 14 S.W. 52, it was held, personal property being involved, that where an express life estate is created, an added power of disposition does not convert the estate into a fee, and that there was no power to dispose of the property by will.

The doctrine of the cases just cited was approved in Hardy v. Mayhew, 158 Cal. 95, 110 P. 113, at pages 115 and 116, where the complaint alleged that the wife, during her lifetime, had given all of the property coming to her under the will to the defendant, and the suit was one by the remaindermen for an accounting, etc. "The court held that the intention of the testator was to give his wife a life estate only, with power to consume so much thereof during her lifetime as she might deem necessary for her support and maintenance, and to give the property, subject to this estate and use, to his brothers and sisters and their children—that the wife had no power to dispose of the fee by gift during her life or by will at her death— that the brothers and sisters and their children had a vested remainder in so much of the estate as should remain unconsumed at the wife's death, and that one coming into possession of the prop-

erty with knowledge of the terms upon which it was held by the wife could be held accountable therefor to the remaindermen."

▋ The Commissioner undoubtedly interpreted the powers given to the donee to. be a general power under the 1951 amendment above mentioned. But is such an interpretation consistent with the definition of a general power under the statute when the power to invade the corpus was limited to the support or maintenance of the donee during her lifetime to such extent as she determined? The amending statute especially provides "A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent, shall not be deemed a general power of appointment." The interpretation of Internal Revenue Service in connection with this provision has significant bearing on the question here. In C.B. 1953–2, page 267,. will be found the Service's interpretation of the pertinent provision of the amendment as follows:

"Section 811(f)—Gross Estate:
Powers of Appointment

"Regulations 105, Section 81.24: Property subject to power of appointment by decedent Rev.Rul. 243

"Internal Revenue Code

"A devise in general terms, expressing neither a fee nor a life estate, coupled with the power in the devisee to sell, convey, encumber, and otherwise dispose of the property devised as may to the devisee seem best, without any authority or order of any court whatsoever, and with a further power in the devisee to distribute by will any property remaining undisposed of at his or her death to certain named beneficiaries, under State law generally creates in the devisee such a power of disposal during life as to constitute a general power of appointment within the purview of section 811

(f) of the Internal Revenue Code. The Internal Revenue Service will apply the foregoing general rule in all cases except those in which the decisions of the Courts in the State wherein the estate is situated hold that a devise in the manner set forth above gives the devisee a life estate with a restricted power such as a power to use the corpus only for purposes of the devisee's health, education, support, or maintenance."

See also Regulations 105, Section 81.24(a) (III): "A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent, shall not be deemed a general power of appointment. Whether a power is limited by an ascertainable standard will be determined by applying the principles followed in ascertaining the extent to which, if any, a bequest to a trust for both private and charitable purposes is allowable as a deduction under section 812(d). A power to consume, invade, or appropriate property for comfort, pleasure, desire, or happiness, is not a power limited by an ascertainable standard."

The power granted the donee in this case was limited to that portion of the life estate which she determined necessary for her support and maintenance. Although she was given the right to invade the corpus, in part or whole, she was limited in that respect to that extent which was necessary for her support. I am of the opinion, therefore, that the power of appointment involved in this case was a limited one and not within the purview of the 1951 amendment and not includible in her gross estate. However, if the Commissioner's interpretation of the power was correct, his action still must be tested by the second question posed by the parties, i. e., whether his determination to tax the

power should be held invalid under applicable decisions condemning retroactive tax legislation.

As already pointed out, the death of the testator and the death of the donee occurred between 1942 and 1951, during which time the 1942 amendment of the 1939 Internal Revenue Code with respect to powers of appointment was in force. The 1942 amendment especially excepted from the definition of power of appointment "a power to appoint within a class which does not include any others than the spouse of the decedent, spouse of the creator of the power * * *" and others not material here. It will be observed that the power such as the one involved here was definitely eliminated as an area of estate taxation, so that neither the testator nor the donee had reason to apprehend its later inclusion in the area of taxation. In Schwab v. Allen, D.C., 78 F.Supp. 234, Judge Davis held in a factual situation almost identical with the one here, that the power was especially within the exception enumerated in subsection (A) of Section 811(f) (2) of the Internal Revenue Code. It seems, therefore, that the positive exception from the definition of power of appointment above quoted was not a mere exclusion, exemption, deduction or credit, all of which might be considered matters of legislative grace to be somewhat more easily withdrawn from the taxpayer, but, on the contrary, represents a definite failure to include within the purview of the tax a distinct type of property or property right.

If the power here involved was a general power of appointment under the 1951 Powers of Appointment Act, as the Director here claims, then the Commissioner necessarily applied the taxing provisions of the 1951 Act retroactively. It will be observed that the effective date of the 1951 Act, Subsection 2(c), 26 U.S.C.A. § 811 note indicates that it was intended to apply to all estates of decedents dying after October 21, 1942, and for all purposes, but obviously this could not be done. No doubt many of the estates of decedents dying within this period, i. e., 1942 to 1951 (almost nine years), had been permanently closed under statutes of limitation, and were not, either on behalf of the Government or the estate, subject to be re-opened, so that there would be manifest inequality of taxation among a class.

The retroactivity in taxing statutes does not necessarily make them unconstitutional. However, it has been held that the placing of unforeseeable gift taxes on completed gifts has been considered so unfair and arbitrary as to be a denial of due process, but such invalidity does not attend a gift tax merely because it is retroactive, and when a donor has reason to anticipate that such a tax may be laid the taxing statute may be given retroactive effect without being too oppressive to be unconstitutional. The decisive test is whether the taxpayer has had his expectations as to taxation unreasonably disappointed. Sometimes the extent of permissible retroactivity can be measured with sufficient certainty in terms of time. Wilgard Realty Co., Inc., v. Commissioner of Internal Revenue, 2 Cir., 127 F.2d 514, and cases therein cited.

The estate tax is an excise tax to tax a particular event, or transaction, or to apply to a particular property, at a specific time. In that respect it differs from the income tax which taxes the net and continuing result of a flow of transactions. There is, therefore, less excuse for considering that an estate tax, or other excise tax, might reasonably be applied retroactively, than is the case of an income tax. It seems appropriate, therefore, to limit the inquiry into the law as to excise tax (including estate and gift tax) cases. No case has been cited sustaining the power of Congress to add to the property includible within a decedent's gross estate by legislation enacted subsequent to his death. How could the testator or donee have reasonably apprehended the possibility of a retroactive tax when Congress had specifically excluded from taxation the power involved in this case as one outside the area of

estate taxation? It would seem reasonable to conclude that such a power under the circumstances would be as immune from retroactive taxation as would gifts which have been held to be untaxable, retroactively. The testator and the donee were warranted in an abiding belief that Congress would not later lay a tax on a particular kind of estate which had theretofore been expressly excepted from taxation. It is concluded, therefore, that the power of appointment in this case was not subject to the tax imposed under the doctrine of Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184; Blodgett v. Holden, 275 U.S. 142, 276 U. S. 594, 48 S.Ct. 105, 72 L.Ed. 206; Untermyer v. Anderson, 276 U.S. 440, 48 S. Ct. 353, 72 L.Ed. 645; Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306, 75 L.Ed. 562; Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76; White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80.

Counsel for plaintiff may move for judgment on the pleadings under Rule 12 (c), Fed.Rules Civ.Proc., on that segment of the complaint seeking recovery of the tax herein considered.