**Don B. POTTER and Harold D. Potter, as Executors of the Last Will and Testament of Charles E. Potter, Deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 847–F.

United States District Court
N. D. West Virginia,
Fairmont Division.

June 1, 1967.

---

Hays Webb and Richard L. Douglas, Amos, Amos & Webb, Fairmont, W. Va., for plaintiffs.

Richard C. Pugh, Acting Asst. Atty. Gen., Myron C. Baum, Washingon, D. C., and Benjamin A. Douglas, Arlington, Va., Attys., John H. Kamlowsky, U. S. Atty., and John Marshall, III, Asst. U. S. Atty., Wheeling, W. Va., for defendant.

CHRISTIE, District Judge:

This matter is submitted to the Court upon an agreed stipulation of facts and it concerns the question of whether or not, under the terms of the joint and mutual will of Charles E. and Ora E. Potter, the surviving husband, Charles E. Potter, possessed a general power of appointment within the purview of 26 U.S.C.A. § 2041 [1] over the property of his deceased wife at the time of his death.

---

1. "Powers of appointment

"(a) *In general.*—The value of the gross estate shall include the value of all property. * * *

\* \* \* \* \*

"(2) *Powers created after October 21, 1942.*—To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, * * *.

\* \* \* \* \*

"(b) *Definitions.*—For purposes of subsection (a)—

"(1) *General power of appointment.*—The term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

"(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment."

Ora E. Potter died December 2, 1952 owning certain real property and shares of stock which, under the terms of her will probated December 12, 1952, passed to her husband, Charles E. Potter. Charles E. Potter died, testate, February 16, 1960, and this dispute concerns whether or not the aforementioned real estate and shares of stock received by him under his wife's will should have been included in his gross estate for purposes of computing federal estate tax.

The pertinent provisions of the joint and mutual will are as follows:

"We give, devise and bequeath all of our property, real, personal and mixed, of every kind, character and description, and wheresoever situate, whether owned by us jointly, or owned by us as tenants in common, or owned by each or either of us as an individual, as follows;

"(1) Upon the death of one of us, the survivor shall take all of the property of every kind and character and wheresoever situate of the one so dying, and the survivor shall hold and use said property for and during his or her lifetime, with the full right to use, utilize and dispose of the same, including the right to sell and convey or lease any real estate, or interest in real estate, for such price and upon such terms and conditions as such survivor shall deem proper.

"(2) Upon the death of the survivor of us, or if we should both die contemporaneously, or so nearly together that the survivor cannot be determined, then all of our property shall go in equal parts to our seven children * * *."

I

It is clear from the foregoing provisions that the decedent, Charles E. Potter, had the power to appoint the property in question to himself at and before the time of his death. The issue then is whether or not this power is circumvented by the provisions of West Virginia Code 36–1–16 [2] or qualified by the requisite ascertainable standard, as defined by the Treasury Regulations, 26 C.F.R. Sec. 20.2041–1, [3] and promulgated under 26 U.S.C.A. § 2041.

2. "If any interest in or claim to real or personal property be given by sale or gift inter vivos or by will to one, with a limitation over either by way of remainder or of executory devise or any other limitation, and by the same conveyence or by will there be conferred, expressly or by implication, a power upon the first taker in his lifetime or by will to use or dispose absolutely of such property, the limitation over shall not fail or be defeated except to the extent that the first taker shall have lawfully exercised such power of disposal. The proceeds of a disposal under such power shall be held subject to the same limitations and the same power of use or disposal as the original property, unless a contrary intent shall appear from the conveyance or will: * * *."

3. "A power to consume, invade, or appropriate income or corpus, or both, for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent is, by reason of section 2041(b) (1) (A), not a general power of appointment. A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them). As used in this subparagraph, the words 'support' and 'maintenance' are synonymous and their meaning is not limited to the bare necessities of life. A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. Examples of powers which are limited by the requisite standard are powers exercisable for the holder's 'support,' 'support in reasonable comfort,' 'maintenance, in health and reasonable comfort,' 'support in his accustomed manner of living,' 'education, including college and professional education,' 'health,' and 'medical, dental, hospital and nursing expenses and expenses of invalidism.' In determining whether a power is limited by an ascertainable standard, it is immaterial whether the beneficiary is required to exhaust his other income before the power can be exercised."

## II

■ Plaintiff takes the position that, inasmuch as the remainder was to go to named beneficiaries, the proper interpretation to be given the will itself is that it was the intent of the parties that the survivor would only have the benefit of the other's property for his or her support and maintenance and that the ascertainable rule is thus to be considered and applied. We are of the opinion that, in view of the broad powers of disposal granted, no such limiting purpose can be gleaned from the language used in the will and that, absent the state statute, the survivor's power to appoint his wife's property to himself was not limited by any "ascertainable standard" relating to his health, education, support or maintenance, as defined in the Regulations, and as such was includible in his gross estate. Ewing v. Rountree, 228 F.Supp. 137 (M.D.Tenn.1964); aff'd 346 F.2d 471 (6th Cir. 1965), cert. denied, 382 U.S. 918, 86 S.Ct. 292, 15 L.Ed.2d 233; Strite v. McGinnes, 215 F.Supp. 513 (E.D.Pa. 1963), aff'd 330 F.2d 234 (3rd Cir. 1964); Phinney v. Kay, 275 F.2d 776 (5th Cir. 1960); Stafford v. United States, 236 F.Supp. 132 (E.D.Wis.1964); Snyder v. United States, 203 F.Supp. 195 (W.D.Ky.1962).

## III

The next issue to be determined is whether or not the state statute referred to, insofar as it allows a remainderman to follow the originally devised property, has the effect of limiting the first taker's power of use and disposal to an ascertainable standard within the confines of 26 U.S.C.A. § 2041(b) (1) (A) and the applicable Regulations.

In Flesher v. United States, 238 F. Supp. 119 (N.D.W.Va.1965), this Court had occasion to comment upon the effect of Code 36–1–16 with regard to a widow's power of appointment over trust property and whether or not that power was sufficient to qualify the property for a marital deduction, 26 U.S.C.A. § 2056. The decision therein was predicated upon what was deemed to have been the testator's primary purpose of providing for his son (the wife's power to invade the trust's corpus for her own benefit being secondary). Thus, while the language of the will was broad with respect to the widow's power to appoint for her own use, when the testator's intent was considered in light of the remainder saving provision of Code 36–1–16, it was determined that the widow's power to appoint to herself failed to meet the marital deduction requirements. This determination is not necessarily dispositive of the present controversy in view of the dissimilar language in the wills and the issues themselves, inasmuch as *Flesher* involved a question of deductibility under Section 2056 while our present concern is with includibility under Section 2041. But it does give rise to understandable frustration, expressed by plaintiff's counsel, with regard to the Government's readiness for estate tax purposes to change its interpretation of particular wordings in instruments depending upon whether they involve deductibility or includibility. Such versatility, however, is not unremarkable in the area of legal advocacy,[4] and though it does place additional burdens upon estate planners as plaintiffs' counsel contend, nonetheless, they concern distinctly different matters and the Courts must decide cases on the issues each raises.

■ Plaintiffs maintain that in an internal revenue case the federal court must look to relevant state court decisions to determine the nature of a power of appointment. United States v. Bank of Clarksdale, 346 F.2d 638 (5th Cir. 1965). This is correct. Morgan v. Comm., 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585. However, the determination

---

4. A more savage touch was contributed by Swift:

"I said there was a Society of Men among us, bred up from their Youth in the Art of proving by Words multiplied for the Purpose, that *White* is *Black* and *Black* is *White*, according as they are paid." Swift, "Gulliver's Travels," 295–296 (Crown Ed. 1947).

in the *Bank of Clarksdale* case is inapplicable to the present situation. It involved a question of whether or not a widow possessed the power to appoint, by will, the remainder of property in which she had been given a life estate with power to consume. The Court held that under Mississippi law she did not have such power and that under the then applicable Internal Revenue Code requirements the property was not properly includible in her estate under Sec. 2041.

■ We are not here concerned with Charles E. Potter's ability to have disposed of his wife's property by will, for he clearly had no such power, but rather with whether his power to consume during his lifetime and for his own benefit was limited by the requisite ascertainable standard relating to health, education, support or maintenance. Clearly the language of the will imposed no such limitation, for in it there is no mention of the "Health, education, support or maintenance" of the survivor. Nor do we find in it any other language from which such could be reasonably implied. Instead, the clear import of the language employed is that the surviving spouse would have the "full right to use, utilize and dispose" of the property as he or she might "deem proper." Thus, the ascertainable standard rule, relating as it does to a devise or grant of a life estate that has for its primary purpose only the support and maintenance of the life tenant during lifetime with remainder over at death, has little or no significance to the instant situation where such a limited purpose is not only absent from the instrument itself, but is distinctly negated by the unlimited powers expressly appearing therein.

Plaintiffs' reliance upon Barritt v. Tomlinson, 129 F.Supp. 642 (S.D.Fla. 1955), to show the existence of a limitation upon Charles E. Potter's power to consume and dispose is misplaced. In that case the Court found justification for the application of the ascertainable standard rule notwithstanding the extensive discretion granted by the testator's will to his wife to consume the property during her lifetime. The soundness of this decision has been questioned, Ewing v. Rountree, supra, and we would hesitate to consider it persuasive in the area.

### IV

■ It is recognized that the general purpose of the state statute is to uphold limitations. Brookover v. Grimm, 118 W.Va. 227, 190 S.E. 697 (1937). A similar Virginia statute was considered remedial and required a liberal construction. Christian v. Wilson, 153 Va. 614, 151 S.E. 300 (1930). There has been a limited number of cases interpreting this statute and insofar as we have been able to discover, none has dealt with the effect it has upon the first taker's right to dispose of the property for his own benefit. Nor do the cases relied upon by the parties herein appear to have dealt with the effect of similar statutory provisions on Sec. 2041 questions.

■ In searching for the legislative intent it is the duty of the Court to consider the object of the statute and the purpose to be accomplished. Lilly v. United States, 238 F.2d 584 (4th Cir. 1956). An ancient canon of interpretation of remedial statutes is that the old law, the mischief and the remedy are to be considered and the statute interpreted, if possible, to suppress the mischief and advance the remedy. Daniel v. Simms, 49 W.Va. 554, 39 S.E. 690 (1901). However, the limits of the application of a statute are generally held to be coextensive with the evil or purpose it was intended to suppress or effectuate, and neither stop short of, nor go beyond, the purpose which the legislature had in view. State v. Abdella, 139 W. Va. 428, 82 S.E.2d 913 (1954).

The statute in question was enacted in 1931. While the West Virginia Legislature may have considered the possible effect of these provisions upon the then existing federal estate tax, it could not have foreseen the application they might have under the 1954 Internal Rev-

enue Code Amendments. The primary problem with which the legislature was concerned was the elimination of the ancient rule that the granting of a life estate in property combined with a power of disposition created a fee simple which defeated any remainder over. In doing this, the West Virginia lawmakers went a step further than our sister state of Virginia (Sec. 55–7 Code of Virginia 1950) in this area, in that not only is the remainder saved but also the proceeds of a disposal of the original property. The purpose of this provision is obvious.

## V

■ Turning to the language of the statute itself as now written we find that, after recognizing the right of a testator to give a life estate to another, with a limitation over by way of remainder, it goes on to say that the testator may, in his will, confer expressly or by implication a power upon the first taker in his lifetime to use or dispose absolutely of such property, and, as we have seen, the language of the will under consideration gives the life taker the "full right to use, utilize and dispose" without any specified limitations. Thus, no inconsistency is perceived in this regard between the statute and the will. The only inhibition imposed upon the first taker by the statute is that he not exercise the power of disposal unlawfully. "Unlawfully" is not defined, but we would suppose it to comprehend some act or conduct so arbitrary or capricious or fraudulent as to constitute misfeasance or malfeasance calling for some form of legal sanctions. The concern then is whether this statutory restriction against unlawful disposal has the effect, as plaintiffs contend, of so limiting the first taker's right of disposal as to make it excludible from his estate for federal estate tax purposes. We think not, in

view of the broad and unabridged power of use and disposal granted by the will.

Even in those jurisdictions which protect remainders after a life estate with an unrestricted power of disposal, the general rule appears to be that the life tenant can dispose of the property as he pleases, so long as he acts in good faith and does not waste or squander the property for the purpose of preventing the remainder from going to the remainderman. See Annotations 2 A.L.R. 1243; 27 A.L.R. 1381; 69 A.L.R. 825; 114 A.L.R. 946.

## VI

In summary, therefore, it is our conclusion that Charles E. Potter, as the first taker under the will in question, possessed a general power of appointment to the use and disposal of his wife's property as he, in his discretion, deemed proper, restrained only by the provisions of Code 36–1–16 against any acts or conduct in relation to such use and disposal that would be unlawful under that statute in terms of the rights of the remainderman, and since there is no language to be found in the will itself or in the statute limiting, defining or restricting this right of lawful use and disposal to his health, education, support or maintenance, or to any other specific purpose, the federal ascertainable standard rule, in the light of such a background, has little or no significant bearing on the question involved. The controlling question, as we view it, is whether, under the terms of the will and the provisions of the state statute, Potter possessed a general power of use and disposal for all legitimate purposes. He undoubtedly did; hence the property in question was properly includible in his gross estate under the provisions of 26 U.S.C.A. § 2041 and no refund of tax is indicated.

Plaintiffs' complaint will accordingly be dismissed.