**ESTATE of Nancy E. ROSENBLATT, Deceased, Joseph Rosenblatt, Trustee, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 79–1163.**

United States Court of Appeals, Tenth Circuit.

Argued July 11, 1980.

Decided Oct. 9, 1980.

---

Howard S. Landa (Ellen Maycock, Salt Lake City, Utah, with him on the brief), of Kruse, Landa, Zimmerman & Maycock, Salt Lake City, Utah, for appellant.

James F. Miller, Tax Div., Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Robert T. Duffy, Washington, D. C., with him on the brief), for appellee.

Before McWILLIAMS, McKAY and SEYMOUR, Circuit Judges.

McKAY, Circuit Judge.

In 1958, Nancy E. Rosenblatt's grandfather established a trust for her benefit. The trust instrument provided the trustee with discretion to expend property or income from the trust property for her benefit as primary beneficiary. The trustee was to distribute the entire income and principal to Nancy when she reached age 21. If she died before she reached 21, the income and property were to be distributed to her estate. In addition, the trust agreement gave Nancy a general power of appointment enabling her to name the persons to whom the trust property and income should be distributed in the event of her death before attaining 21 years of age. This power could be exercised by will or by written instrument delivered to the trustee during Nancy's lifetime.[1]

---

1. In relevant part, the Nancy E. Rosenblatt Trust provided:

 D. *Distribution*. . . .

 . . . .

 (2) In the event that such primary beneficiary is not then living, Trustee shall distribute at the death of such primary beneficiary prior to attaining the age of 21 years, all of the trust property and remaining income to the estate of such primary beneficiary absolutely and in fee simple; provided, however, that in the event such primary beneficiary has exercised the gen-

Nancy died at the age of 16. It is undisputed that, due to her minority, decedent could not make an effective will, Utah Code Ann. § 74–1–1 (1953), nor could a guardian, acting on her behalf, make a will for her. Record, vol. 1, at 40–41. It is also clear that, under Utah law, a minor may disaffirm her contracts, Utah Code Ann. § 15–2–2 (1953), with some limitations. *Id.* at § 15–2–3.

The Commissioner determined that the value of the trust property was includable in decedent's estate under either I.R.C. § 2033 or § 2041. The trustee filed a petition challenging the inclusion of the trust property. The Tax Court held that Nancy owned a vested remainder interest in the trust income and property and that such interest is includable in her estate under I.R.C. § 2033.[2] The court did not rule on the Commissioner's alternate assertion that decedent possessed at death a general power of appointment within the meaning of I.R.C. § 2041(a)(2), which would require the inclusion of the value of the property subject to that power in her gross estate. The trustee has appealed.

I.

■ While the trial court decided to treat this case as controlled by § 2033, we think the better view is that "a donated power of appointment . . . [is] governed exclusively by § 2041 and [is] not subject to § 2033." *United States v. Turner,* 287 F.2d 821, 822 n.1 (8th Cir. 1961), *citing Helvering v. Safe Deposit & Trust Co.,* 316 U.S. 56, 57–63, 62 S.Ct. 925, 926–29, 86 L.Ed. 1266 (1942). The

issues raised by decedent's minority are closely analogous to the issues raised when the holder of a general power dies mentally incompetent without having exercised or released the power. This latter issue has been consistently litigated under § 2041. *See, e. g., Alperstein v. Commissioner,* 613 F.2d 1213 (2d Cir. 1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980); *Pennsylvania Bank & Trust Co. v. United States,* 597 F.2d 382 (3rd Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Fish v. United States,* 432 F.2d 1278 (9th Cir. 1970); *Finley v. United States,* 404 F.Supp. 200 (S.D.Fla. 1975), *rev'd on other grounds,* 612 F.2d 166 (5th Cir. 1980); *Townsend v. United States,* 232 F.Supp. 219 (E.D.Tex.1964); *Williams v. United States,* 78–2 U.S.T.C., ¶ 13,264 (W.D. Tex., Sept. 28, 1978), *appeal docketed,* No. 78–3797 (5th Cir. 1978); *Estate of Gilchrist v. Commissioner,* 69 T.C. 5 (1977), *appeal docketed,* No. 78–2400 (5th Cir. 1978); *Estate of Freeman v. Commissioner,* 67 T.C. 202 (1976); *Estate of Edelman v. Commissioner,* 38 T.C. 972 (1962); Comment, *Federal Estate Tax: A Possible Exception in the Application of I.R.C. Section 2041 to Testamentary Powers of Appointment Held by Incompetent Decedents,* 1977 B.Y.U.L.Rev. 644.

II.

Appellant does not dispute that the trust instrument granted decedent a general power of appointment. Rather, appellant contends that under applicable state law, *see Morgan v. Commissioner,* 309 U.S. 78,

---

eral power of appointment herein given to such primary beneficiary, Trustee shall distribute the remaining property and income of the trust of which such person is primary beneficiary, to the person or persons appointed by such exercise, distribution to such appointee or appointees to be made only upon the death of such primary beneficiary prior to attaining the age of 21 years.

E. *General Power of Appointment.* The primary beneficiary of each trust is hereby given a general power to appoint the property and income earned by property of the trust of which such person is primary beneficiary to the estate, the creditor, or the creditors of the estate of such primary beneficiary, or to any other

person or persons (including Trustor or Trustor's estate), to be effective only at the time and in the event that such primary beneficiary dies prior to attaining the age of 21 years. Such general power of appointment may be exercised by such primary beneficiary by will or by written instrument executed and delivered during life of the primary beneficiary to the trustee . . . .

2. I.R.C. § 2033 reads:

The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.

80–81, 60 S.Ct. 424, 425–26, 84 L.Ed. 585 (1940), decedent's minority precluded her from exercising the general power.[3] This disability, it is urged, rendered the power incapable of exercise and beyond the pale of § 2041(a)(2).[4]

"The federal estate tax is a tax on the exercise of the privilege of directing the course of property at one's death." *Estate of Bagley v. United States*, 443 F.2d 1266, 1270 (5th Cir. 1971) (Ainsworth, J., dissenting); *see Estate of Rogers v. Commissioner*, 320 U.S. 410, 413, 64 S.Ct. 172, 174, 88 L.Ed. 134 (1943). Prior to 1942, this rationale prompted Congress to include in a decedent's taxable estate property that passed via an *exercised* general power. Revenue Act of 1918, ch. 18, § 402(e), 40 Stat. 1057, 1097; *Alperstein v. Commissioner*, 613 F.2d 1213, 1216 (2d Cir. 1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980). Soon, an obvious deficiency inherent in this treatment of general powers was noted: one who holds a general power of appointment can effectively "direct the course" of property subject to it by *failing* to exercise it and thus deciding in favor of the takers by default. S.Rep.No. 1631, 77th Cong., 2d Sess. 232 (1942); *Alperstein v. Commissioner*, 613 F.2d at 1216; *Estate of Bagley v. United States*, 443 F.2d at 1270 (Ainsworth, J., dissenting). Congress provided for the taxation of this passive exercise of control over property in the Revenue Act of 1942, ch. 619, § 403(a), 56 Stat. 798, 942, by taxing all general powers whether they were exercised or not.

The current I.R.C. § 2041 is, in material part, the present manifestation of the Powers of Appointment Act of 1951, ch. 165, § 2(a), 65 Stat. 91, 91–93. The 1951 act also gave an additional rationale for taxing all post–1942 general powers: to provide "a test of taxability which is simple, clear–cut, and easy to apply." S.Rep.No. 382, 82d Cong., 1st Sess. 3 (1951) (reprinted in [1951] U.S.Code Cong. & Admin.News, pp. 1530, 1531).

### III.

The general purpose of the federal estate tax (*i.e.,* to tax the exercise of control of property at death), the realization that even an unexercised general power of appointment can constitute such control and Congress' interest in a rule that is easy to apply, combine and are given force in § 2041.

Three other circuits have concluded that the inability to exercise a power due to mental incompetence is not pertinent to a *court's* inquiry into whether property subject to that power is includable in a decedent's gross estate under § 2041(a)(2). The Second Circuit, in *Alperstein v. Commissioner*, 613 F.2d 1213 (2d Cir. 1979), *cert.*

---

**3.** Appellant cites Restatement of Property § 345(1) (1940) in support of the argument that decedent lacked the capacity to exercise the power of appointment:

(1) The donee of a power has capacity to make an effective appointment and an effective release, if he has capacity, with reference to similar property owned by him, to make a transfer which is not subject to disaffirmance by reason of infancy or insanity.

Unlike appellant, we do not read this section to mean that every attempted exercise of a general power of appointment by a minor who may disaffirm his contracts is void. Even if Utah has adopted § 345, which has not been shown, at most the section means that a minor lacks capacity to exercise a general power *to the extent that* he may disaffirm his contracts. Insofar as *some* contracts of minors are not subject to disaffirmance, Utah Code Ann. § 15–2–3 (1953), so would *some* exercises of a general power by a minor be valid.

**4.** In relevant part, I.R.C. § 2041 provides:

(a) . . . The value of the gross estate shall include the value of all property—

. . . .

(2) . . . [W]ith respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942 . . . . For purposes of this paragraph (2), the power of appointment shall be considered to exist on the date of the decedent's death . . ., whether or not . . . the power has been exercised.

. . . .

(b) Definitions—For purposes of subsection (a)—

(1) . . . The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate . . . .

*denied,* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980), included property subject to a decedent's general power in her gross estate despite the fact of her incompetence and consequent inability to exercise the power at death. The Third and Ninth Circuits have reached the same result on substantially similar facts. *Pennsylvania Bank & Trust Co. v. United States,* 597 F.2d 382 (3d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Fish v. United States,* 432 F.2d 1278 (9th Cir. 1970).[5] The conclusions reached in these cases are entirely consistent with the considerations which provide the current rationale for § 2041.

In its desire to tax the exercise of control over property at death, to serve notice that general powers of appointment constitute such control and to create a rule that is easy to administer, Congress drafted § 2041 in a way that makes capacity to exercise general powers irrelevant. This is not to say that Congress failed to consider capacity. Rather, § 2041 reflects a determination that all general powers of appointment carry with them some degree of control over the property subject to them. Thus, complex inquiry into a donee's capacity is unnecessary. "It would stretch the imagination to think that Congress intended to measure estate tax liability by an individual's fluctuating, day–by–day, hour–by–hour capacity to dispose of property which he owns." *Commissioner v. Estate of Noel,* 380 U.S. 678, 684, 85 S.Ct. 1238, 1241, 14 L.Ed.2d 159 (1965). Similarly, it is not for us to ponder here whether the decedent might have been able to exercise her power.[6] It is only necessary to ascertain the existence of the power in the granting instrument.[7]

## IV.

The final blow to appellant's argument that Utah's limitations on decedent's ability to exercise her power should cause the property subject to it to be excluded from her estate is found in I.R.C. §§ 2056(b)(5), 2503(c).

I.R.C. § 2056(b)(5) provides that property passing in trust to a surviving spouse can qualify for exclusion from the decedent's estate if, among other things, the surviving spouse has the power to appoint such property in favor of herself or her estate. Competency under local law has been determined to be "irrelevant for determining whether a power is 'exerciseable' within the meaning of the marital deduction." *Alperstein v. Commissioner,* 613 F.2d 1213, 1217

---

5. Two cases raising this issue are currently pending before the Fifth Circuit. *Williams v. United States,* 78–2 U.S.T.C., ' 13,264 (W.D. Tex., Sept. 28, 1978) and *Estate of Gilchrist v. Commissioner,* 69 T.C. 5 (1977). *See also Doyle v. United States,* 358 F.Supp. 300, 305 (E.D.Pa.1973); *Townsend v. United States,* 232 F.Supp. 219 (E.D.Tex.1964); *Estate of Freeman v. Commissioner,* 67 T.C. 202 (1976); *Estate of Edelman v. Commissioner,* 38 T.C. 972 (1962); Comment, *Section 2041(a)(2): Incompetents and General Powers of Appointment,* 33 The Tax Lawyer 950 (1980).

6. Judge Friendly noted that the decedent in *Alperstein v. Commissioner,* 613 F.2d 1213 (2d Cir. 1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980), had an opportunity to exercise her power during a previous period of competency. 613 F.2d at 1215 n.2. Similarly, there are circumstances under which decedent in this case could in fact have exercised her power. Utah Code Ann. § 15–2–1 (1953) would have provided decedent with majority status had she married, in which case she could have exercised the power by written instrument. In addition, Utah Code Ann. § 15–2–3 (1953) provides for instances in which a minor's right to disaffirm his contracts is limited. Thus, a written exercise of a general power could be binding under the limited circumstances of this statute. *See* note 3, *supra.*

These observations do not form the basis of decision here. Rather, they point to the reasonableness of Congress' determination that all general powers of appointment grant some indicia of control to the donee.

7. It is revealing to note that provision has been made to exclude property subject to a general power from a decedent's estate when there really is *no* possibility of its exercise at decedent's death. Treas.Reg. § 20.2041–3(b) provides that "a power which *by its terms* is exerciseable only upon the occurrence during the decedent's lifetime of an event or a contingency which did not in fact take place or occur during such time is not a power in existence on the date of the decedent's death." (Emphasis added). *See* Rev. Rule 75–351, 1975–2 C.B. 368 (issued in response to the facts of this case).

(2d Cir. 1979), *cert. denied,* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980).

I.R.C. § 2503(c) states the conditions under which transfers to minors will be considered gifts of present interests sufficient to qualify for the $3,000 gift exclusion available under I.R.C. § 2503(b). Unless the property is made payable to the minor's estate in case of his death, § 2503(c)(2)(B) requires that the minor be given a general power of appointment over the property transferred to him in trust in order to qualify for the § 2503(b) exclusion. Treas.Reg. § 25.2503–4(b) explicitly makes incapacity to exercise the power due to the donee's minority irrelevant to the determination of whether the minor possesses a power for purposes of § 2503(c).

These two treatments of incapacity to exercise a power, in light of the fact that the federal estate and gift tax laws "are in *pari materia* and must be construed together," *Estate of Sanford v. Commissioner,* 308 U.S. 39, 44, 60 S.Ct. 51, 56, 84 L.Ed. 20 (1939), suggest that the question of capacity should not be treated any differently under § 2041.

### V.

 Minority, like mental incompetency, is not pertinent to a determination of whether a decedent had a general power of appointment for purposes of I.R.C. § 2041. In this case the instrument creating the trust granted decedent a general power of appointment and did not, by its terms, limit its exercise. The property subject to that power is part of decedent's gross estate under I.R.C. § 2041(a)(2).

AFFIRMED.