ESTATE OF NORMAN H. VISSERING, DECEASED,
ELIZABETH L. LAFFERTY, EXECUTRIX, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1525-89.     Filed May 23, 1991.

*Patricia Tucker,* for the petitioner.

*Thomas F. Eagan* and *Harry Beckhoff,* for the respondent.

## OPINION

HALPERN, *Judge:*\* By notice of deficiency dated November 17, 1988, respondent determined a deficiency in petitioner's Federal estate tax in the amount of $708,320.07. The value of certain shares of stock having been agreed to previously by the parties, the only issue presented for decision is whether the decedent, Norman H. Vissering (decedent), possessed at his death a general power of appointment over the principal of a family trust. If decedent possessed such power, then the value of that principal must be included in the value of the gross estate. The parties have agreed that, if includable in the gross estate, the principal of the family trust had a value of $1,516,187.

The parties have submitted this case fully stipulated, and the facts so stipulated are found accordingly. By this reference, the stipulation of facts and its attached exhibits are incorporated into this opinion. Unless otherwise noted, all section references are to the Internal Revenue Code of 1954 as amended and in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure. We summarize below the pertinent facts.

## Background

Petitioner is the Estate of Norman H. Vissering, Deceased, Elizabeth L. Lafferty, Executrix. At the time the petition in this case was filed, Elizabeth L. Lafferty

---

\*By order of the Chief Judge, this case was reassigned to Judge James S. Halpern for disposition.

maintained her legal residence in Hanover, New Mexico. Ms. Lafferty is decedent's only daughter.

On November 14, 1953, Grace Hayden Vissering, decedent's mother (trustor), executed a revocable trust agreement, which was amended on October 5, 1954, and again on November 5, 1964 (as amended, the trust agreement). The trust agreement provided that such agreement and the trust created thereby were to be governed by Florida law. Trustor died on November 20, 1965, and decedent on March 31, 1985. In the trust agreement, trustor appointed as cotrustees of the trust decedent and the Exchange National Bank of Tampa, Florida, the latter of which is known now as NCNB National Bank. Although decedent had previously resigned and subsequently been reappointed as cotrustee, after 1964 neither decedent nor anyone acting on decedent's behalf tendered decedent's resignation as cotrustee, and no suit was instituted to remove decedent as cotrustee.

In establishing the powers and duties of the cotrustees, the trust agreement states that:

> Except wherein this instrument expressly provides that the trust powers shall be executed by one Trustee, or except where such is the reasonable interpretation of this instrument, all trust powers provided for hereunder shall be exercised jointly.

Regarding successor trustees, the trust agreement states that:

> Upon the death of Trustor's son, NORMAN H. VISSERING, or upon his resignation as Trustee, he shall not be succeeded by any individual Trustee, but, instead Trustor's corporate Trustee shall continue to serve and shall succeed to all the powers, duties and obligations set forth for Trustor's individual Trustee. Upon the resignation of Trustor's corporate Trustee, if Trustor's son, NORMAN H. VISSERING, be then living, he shall designate its successor. If there be no individual Trustee then serving, the successor Trustee to a corporate Trustee who resigns shall be selected by the court of appropriate jurisdiction in Orange County, Florida.

Following trustor's death in 1965, the trust became known as the Grace Hayden Vissering Family Trust (the family trust). The assets of the family trust were held for the benefit of designated family members, including decedent, decedent's wife, son, and daughter, and the daughter's

three children. Following trustor's death, decedent was both a beneficiary and one of the cotrustees of the family trust.

The family trust was to continue until the later of: (a) The death of the survivor of decedent, decedent's wife, and decedent's daughter or (b) the time at which the youngest child of decedent's daughter living at trustor's death attained the age of 21. Prior to decedent's death on March 31, 1985, decedent's wife died, and all three children of decedent's daughter reached the age of 21. Since decedent's daughter survived decedent, the family trust continued after decedent's death.

At the time of his death, decedent was receiving all of the net income of the family trust. Following his death, one-half of the corpus of the trust was distributed outright to decedent's son and the remaining half continued in trust for the benefit of decedent's daughter and the daughter's three children.

The trust agreement granted the cotrustees certain powers, including the following:

> During the term of the GRACE HAYDEN VISSERING FAMILY TRUST, the Trustees shall further be authorized to pay over or to use or expend for the direct or indirect benefit of any of the aforesaid beneficiaries, whatever amount or amounts of the principal of this Trust as may, in the discretion of the Trustees, be required for the continued comfort, support, maintenance, or education of said beneficiary.

Decedent developed Alzheimer's disease. In May 1984, decedent's daughter took decedent from his home in Orlando, Florida, to live in El Paso, Texas. Later in 1984, decedent and his daughter moved from El Paso to Silver City, New Mexico, where they both resided until decedent's death in March 1985.

Due to decedent's deteriorated mental condition and advancing disease, in January 1985 decedent's daughter petitioned the appropriate New Mexico State court for a finding that decedent was incapacitated and for her appointment under New Mexico law as guardian of decedent and as conservator of decedent's estate. The State court issued an order dated January 31, 1985, making the requested appointment; and decedent's daughter executed, on February 1, 1985, letters of acceptance of guardianship and conservatorship. Accordingly, at the time of decedent's

death on March 31, 1985, decedent had been found to be an incapacitated person.

As executrix of his estate, decedent's daughter timely filed a U.S. Estate Tax Return, Form 706. An audit of that return gave rise to the notice of deficiency dated November 17, 1988, in response to which the petition in this case was filed.

## Discussion

The facts of this case are not in dispute; we are faced here only with a question of law. That question is whether decedent possessed at his death a general power of appointment within the meaning of section 2041(a)(2).

### A General Power of Appointment

Section 2041(a)(2) provides that the value of a decedent's gross estate includes the value of all property to the extent of any property with respect to which the decedent had at the time of death a general power of appointment created after October 21, 1942.

With certain exceptions, section 2041(b)(1) defines a general power of appointment to mean a power exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate. The regulations specifically contemplate that a beneficiary may possess a power of appointment with regard to trust property. See sec. 20.2041-1(b)(1), Estate Tax Regs. Thus, if a trust instrument provides that the beneficiary may appropriate or consume the principal of the trust, the power to consume or appropriate is a power of appointment. *Id.* The fact that a decedent holds the power in a fiduciary capacity as a trustee or that a decedent can only exercise the power jointly with another does not prevent the power from being a general power of appointment. *Maytag v. United States,* 493 F.2d 995, 997 (10th Cir. 1974); *Estate of Jones v. Commissioner,* 56 T.C. 35, 41 (1971), affd. without published opinion 474 F.2d 1338 (3d Cir. 1973); *Estate of Lanigan v. Commissioner,* 45 T.C. 247, 251 (1965).

### Exceptions

Under section 2041(b)(1)(C)(ii), a power of appointment does not constitute a general power of appointment if the

power is exercisable by a decedent only in conjunction with a person having a substantial interest in the property subject to the power, which interest is adverse to exercise of the power in favor of a decedent. Here, decedent and a bank were cotrustees of the family trust, and the trust agreement allowed the cotrustees of the family trust to invade principal for the benefit of any of the beneficiaries, including decedent. However, a coholder of a discretionary power to distribute trust assets, such as the bank here, has no adverse interest merely because of its joint possession of the power. Sec. 20.2041-3(c)(2), Estate Tax Regs.; *Estate of Jones v. Commissioner, supra* at 41-42. Further, the exception found in section 2041(b)(1)(C)(ii) is limited to cases where, in addition to its status as a cotrustee and its entitlement to incidental compensation as such, the cotrustee has a substantial interest in the property which is adverse to the beneficiary. *Miller v. United States,* 387 F.2d 866, 870 (3d Cir. 1968). The record includes no evidence that the bank had any such substantial interest in any asset of the family trust. Thus, the exception found in section 2041(b)(1)(C)(ii) is inapplicable.

Section 2041(b)(1)(A) provides another exception to the definition of a general power of appointment. It excludes from such definition a power to consume, invade, or appropriate property for the benefit of the decedent that is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent. To test for this exception requires a two-step analysis. *Estate of Little v. Commissioner,* 87 T.C. 599, 601 (1986); *Estate of Sowell v. Commissioner,* 74 T.C. 1001, 1003 (1980), revd. on other grounds 708 F.2d 1564 (10th Cir. 1983). First, the standard set forth in the instrument must be ascertainable. Second, the standard must relate solely to the decedent's health, education, support, or maintenance.

*Was Decedent's Power Limited by the Required Ascertainable Standard?*

In the case before us, decedent was a beneficiary of the family trust entitled to all the trust's net income during his life. As long as he remained a cotrustee with the bank, he had the power, under the trust agreement, to distribute to

any beneficiary, including himself, principal of the trust "as may, in the discretion of the Trustees, be required for the continued comfort, support, maintenance, or education of the beneficiary." Since decedent had, at his death, the power to distribute trust principal to himself, he held a general power of appointment unless the exception found in section 2041(b)(1)(A) applies. We therefore must determine if the standard specified in the trust agreement of "required for the continued comfort, support, maintenance, or education" is an ascertainable standard relating to health, education, support, or maintenance. The fly possibly in the ointment is the word "comfort." That word is not contained in the statutory formulation found in section 2041(b)(1)(A); and respondent's argument must be either that such word does not describe an ascertainable standard or that, even if it does, such standard does not relate solely to the health, education, support, or maintenance of decedent.

As a preliminary matter, we note that, here, as in other cases involving a power that is conditionally exercisable in favor of a decedent, a sense of unfairness may arise. The record contains no evidence that decedent ever exercised his power to invade the principal of the family trust or that decedent was accorded that power in an attempt to avoid any estate tax. Petitioner, though, may well be subject to additional estate tax in a situation where a minor change in the language of the trust agreement might have accomplished the same purposes while clearly permitting the exclusion under section 2041 of the corpus of the family trust from the value of the gross estate. If the trust agreement had not included the word "comfort," decedent's power of appointment unquestionably would have fallen under the exception found in section 2041(b)(1)(A). See sec. 20.2041-1(c)(2), Estate Tax Regs.

*"Required for the Continued Comfort" of the Beneficiary*

The question is whether the phrase "required for the continued comfort" describes an ascertainable standard relating to health, education, support, or maintenance. The question requires that we look to State law. It is virtually hornbook law that State law determines the legal interests and rights created by a trust instrument, while Federal law

determines the Federal tax consequences of those interests and rights. *Morgan v. Commissioner,* 309 U.S. 78, 80, amended on denial of rehearing 309 U.S. 626 (1940); *Estate of Little v. Commissioner,* 87 T.C. 599, 601 (1986). Here, pursuant to the trust agreement, Florida law applies to the construction of the power held by decedent as a cotrustee of the family trust. A question concerning the construction of a will or a trust document generally involves a determination of the testator's intent, as expressed in the will or trust instrument. *Barnett First National Bank of Jacksonville v. Cobden,* 393 So. 2d 78, 79 (Fla. Dist. Ct. App. 1981) (Under Florida law, the testator's intent, as expressed in the instrument, should prevail in the construction of wills and trusts.).

The trust agreement permitted decedent to invade the family trust as, among other reasons, "required for the continued comfort" of himself. We have found no Florida cases interpreting that or any similar phrase. We must, nonetheless, ascertain the law of Florida as the highest court of that State would apply it. See *Commissioner v. Estate of Bosch,* 387 U.S. 456, 462-465 (1967). Based on case law in other States, we are convinced that the highest court in Florida would find the use of the word "comfort" to mean that the standard employed by the trust agreement neither was fully ascertainable nor related solely to the health, education, support, or maintenance of decedent, as required by section 2041(b)(1)(A). First, at least in some circumstances, courts have found a limitation on the sale or consumption of property not to be limited to an ascertainable standard when limited to the "comfort" of the benefited individual. *Lehman v. United States,* 448 F.2d 1318, 1320-1321 (5th Cir. 1971); *Doyle v. United States,* 358 F. Supp. 300, 309 (E.D. Pa. 1973). Second, neither have courts equated "comfort" with health, education, support, or maintenance, even when those terms were used in series. *Miller v. United States,* 387 F.2d 866, 869 (3d Cir. 1968); *Doyle v. United States, supra* at 307-309. See *First Virginia Bank v. United States,* 490 F.2d 532, 535-536 (4th Cir. 1974); *Strite v. McGinnes,* 330 F.2d 234, 239-240 (3d Cir.), cert. denied 379 U.S. 836 (1964). Although not free from all doubt, we believe that the highest court in Florida would

find that the limitation in the trust agreement based on "comfort" does not impose an ascertainable standard related to health, education, support, or maintenance.

Our conclusion here is consistent with the discussion in the Treasury regulations of the word "comfort." Those regulations state that a power to use property for the *comfort,* welfare, or happiness of the holder of the power is *not* limited by the standard found in section 2041(b)(1)(A) and, thus, falls outside the exception. Sec. 20.2041-1(c)(2), Estate Tax Regs. In contrast, standards based on "support in reasonable comfort" and "maintenance in health and reasonable comfort" satisfy the requisite standard. *Id.* The use of the word "comfort" in the trust agreement contrasts with its use in the last two instances from the regulations, where the word "comfort" is contained in a phrase modifying, but limited by, the words "support" and "maintenance"—two of the four permitted purposes found in the section 2041(b)(1)(A) exception. We do not see the modification of the word "comfort" in the trust agreement by the adjective "continued" as having any similar effect. See Webster's Ninth New Collegiate Dictionary (1985) (defining "continued" as "lasting or extending without interruption").

## *Special Limitations Applicable to a Trustee-Beneficiary*

Petitioner advances the argument that, under Florida law, any power held by a trustee-beneficiary to distribute principal to himself is limited to distributions for support and maintenance. We do not believe that Florida law supports that argument. Most of the cases cited by petitioner concern the law of other States, and we are not persuaded that they represent Florida law. The decision in *Mesler v. Holly,* 318 So. 2d 530, 533 (Fla. Dist. Ct. App. 1975), suggests that a trustee with a power to invade who also is a life beneficiary is required to exercise his power in good faith and within reasonable limits, so as to protect the interests of the remaindermen. See *Dunkley v. Peoples Bank & Trust Co.,* 728 F. Supp. 547, 556-558 (W.D. Ark. 1989) (describing the duties of trustees under Florida law). The fact that Florida law would have required decedent to exercise his power in good faith, however, is insufficient for us to conclude that the power was exercisable pursuant to

an ascertainable standard. See *Strite v. McGinnes*, 330 F.2d 234, 240 (3d Cir.), cert. denied 379 U.S. 836 (1964) ("The search of §2041 is the breadth of power given a decedent. * * * Good faith exercise of a power is not determinative of its breadth.").

Petitioner also cites *Barritt v. Tomlinson*, 129 F. Supp. 642 (S.D. Fla. 1955), for the proposition that a trustee-beneficiary is limited under Florida law in his power of invasion of a trust's principal to his needs for support or maintenance. This Court, however, is not convinced that a Florida court would apply *Barritt* in interpreting the trust agreement. First, *Barritt* can.be distinguished on its facts. In *Barritt*, the court interpreted the phrase "the right to use all or any part of the principal as she may see fit" in a will and found that the decedent's paramount purpose was to insure the support and maintenance of his wife during her lifetime. *Barritt v. Tomlinson, supra* at 645. The relevant phrase in the trust agreement is, of course, very different. Second, the decision in *Barritt* has been criticized by several courts and has not been cited in any Florida court case that we could locate. The Florida court in *Barritt* based its decision on a Tennessee case. *Barritt v. Tomlinson, supra* at 645 (citing *Downing v. Johnson*, 45 Tenn. 229 (1867)). In *Ewing v. Rountree*, 228 F. Supp. 137, 142 n.9 (M.D. Tenn. 1964), affd. 346 F.2d 471, 473 (6th Cir.), cert. denied 382 U.S. 918 (1965), the court noted that the decision in *Barritt* represented "an erroneous view of the principle established by" *Downing*. In addition, in *Potter v. United States*, 269 F. Supp. 545, 549 (N.D. W.Va. 1967), the court stated with respect to *Barritt* that "The soundness of this decision has been questioned, *Ewing v. Rountree, supra*, and we would hesitate to consider it persuasive in the area." Furthermore, *Barritt* was not cited by the Florida court in *Mesler v. Holly*, 318 So. 2d 530 (Fla. Dist. Ct. App. 1975), which concerned a similar fact pattern.

## Effect of Decedent's Incapacity

Finally, petitioner presents an argument based on the fact that decedent had been determined to be incapacitated by a New Mexico State court. In the definition of a general power of appointment in section 2041(b)(1), the term "exer-

cisable" refers to the existence of the power in the decedent to appoint, not to his actual ability or capacity to exercise that power. *Estate of Rosenblatt v. Commissioner,* 633 F.2d 176 (10th Cir. 1980); *Estate of Gilchrist v. Commissioner,* 630 F.2d 340 (5th Cir. 1980), revg. 69 T.C. 5 (1977) and *Estate of Reid v. Commissioner,* 71 T.C. 816 (1979); *Estate of Alperstein v. Commissioner,* 71 T.C. 351, 353 (1978), affd. 613 F.2d 1213 (2d Cir. 1979), cert. denied sub nom. *Greenberg v. Commissioner,* 446 U.S. 918 (1980). The mere fact that decedent was declared to be incapacitated thus is not determinative.

Petitioner, however, argues that, upon the determination of such incapacity, decedent automatically ceased under Florida case and statutory law to serve as a cotrustee of the family trust. Petitioner's argument is based on *Barnett First National Bank of Jacksonville v. Cobden,* 393 So. 2d 78 (Fla. Dist. Ct. App. 1981), which we believe petitioner misreads. In *Barnett,* the court considered the meaning of the phrase "fail to serve" in a provision of a trust instrument dealing with successor trustees and concluded that the adjudicated incompetency of a cotrustee meant that, under such provision, the cotrustee had failed to serve. It is unclear from the case whether the incompetency of the cotrustee itself automatically gave rise to his failure to serve either under the trust document or State law, or whether some other intervening cause gave rise to that failure, such as a petition for his removal. There is simply insufficient discussion of that point in the case for us to draw any conclusion whatsoever.

Petitioner also cites a Florida statute that provides that "If two or more trustees are appointed to perform a trust, and any of them * * * , having accepted, *ceases to be a trustee,* the surviving or remaining trustees shall perform the trust and succeed to all the powers, duties and discretionary authority given to the trustees jointly." Fla. Stat. Ann. sec. 737.404(2) (West 1976) (emphasis added). While this statute provides a rule of automatic succession, it does not establish when a trustee ceases to be a trustee. See *Douglas Properties v. Stix,* 159 So. 1, 5 (Fla. 1935) ("death or resignation"). We have found no cases interpreting the phrase "ceases to be a Trustee" and thus cannot

conclude that the determination of decedent's incapacity automatically caused decedent to cease being a cotrustee under Florida law. Further, we note that, although the New Mexico State court declared decedent to be incapacitated, no judicial action was taken to remove decedent as cotrustee following the declaration of incapacity. The general rule is that, absent court action, the incapacity of a trustee does not automatically cause his removal as trustee. See G.G. Bogert & G.T. Bogert, Trusts and Trustees, secs. 127, 566 (2d rev. ed.); A. Scott & W. Fratcher, Trusts, secs. 89, 92, 107 (4th ed. 1987); 1 Restatement, Trusts 2d, secs. 89, 92, 107 (1959). Moreover, even if the general rule were to the contrary, it is unclear whether Florida was bound to recognize a New Mexico court's finding of incapacity. See 41 Am. Jur. 2d 562 (1968).

We conclude that, at the time of his death, decedent remained a trustee of the family trust.

### Conclusion

In sum, we hold that decedent possessed at his death a general power of appointment over the principal of the family trust within the meaning of section 2041(a)(2). Thus, the value of the principal of that trust is includable in the value of decedent's gross estate.

*Decision will be entered under Rule 155.*