493 F.2d 995
 74-1 USTC P 12,976
 Cornelia H. MAYTAG, and the First National Bank of Colorado
Springs, Colorado, as Co-Executors of the Estate
of James B. Maytag, Deceased,
Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 73-1556.
 United states Court of Appeals, Tenth Circuit.
 Argued and Submitted Jan. 10, 1974.
Decided Jan. 30, 1974, As Amended April 3, 1974.
 
 Mac Asbill, Jr., Sutherland, Asbill & Brennan, Washington, D.C. (William A. Sutherland and Carolyn P. Chiechi, Sutherland, Asbill & Brennan, Washington, D.C., and Joseph F. Colantuno, Morrato, Gueck & Colantuno, Denver, Colo., on the brief), for plaintiffs-appellants.
 William S. Estabrook, III, Atty. Tax Div., Dept. of Justice (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Bennett N. Hollander and Robert S. Watkins, Attys., Tax Div., Dept. of Justice, and James L. Treece, U.S. Atty., of counsel, on the brief), for defendant-appellee.
 Before HILL, BARRETT and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 Appellants seek reversal of a United States District Court decision denying to the estate of James B. Maytag (the taxpayer) refund of federal estate taxes in the amount of $612,708.41, which sum was paid by appellant following ruling by the Commissioner of Internal Revenue that the value of the assets of two inter vivos trusts were part of the taxable assets of the gross estate of James B. Maytag. The basis for the decision was that the decedent possessed a general power of appointment. Section 2041 of the Internal Revenue Code of 1954.[1]
 
 
 2
 At trial both parties filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The District Court denied taxpayers' motions and granted the government's motion for summary judgment. The court rendered a Memorandum Opinion and Order on November 6, 1972. Final judgment was entered on March 26, 1973.
 
 
 3
 The undisputed evidence shows that in 1944, Lewis B. Maytag created two inter vivos trusts for his son, decedent James B. Maytag. These were dated March 8, 1944 and December 20, 1944. Both were irrevocable and contained substantially identical provisions; James B. Maytag was designated the principal beneficiary in each
 
 
 4
 The crucial provisions of the March trust called for mandatory distributions to decedent when he attained the ages of 21, 25 and 30,[2] with 'the entire remainder of the Estate in Trust' to be distributed to decedent upon his attaining the age of 35. The December trust provided for distribution of the entire corpus to the decedent when James reached the age of 40.[3]
 
 
 5
 The trusts named the First National Bank of Colorado Springs, Colorado as trustee. In addition, the settlor appointed two individual co-trustees, providing that the decedent would also become a co-trustee upon attaining the age of 21. The co-trustees were granted 'the supreme power in respect to the management, administration and control of the Trust Estate,' whereas the trustee was relieved of all responsibility 'when acting in conformity with the directions and instructions of the co-trustees.'
 
 
 6
 Both trust instruments contained the following discretionary termination provision:
 
 
 7
 If at any time the Co-Trustees and the Trustee conclude and unanimously agree that it is desirable or expedient and in the interest of the beneficiary to terminate the Trust, they may do so: and in such event the then entire Trust Estate remaining in Trust shall forthwith vest in and be distributed to the beneficiary, free from this Trust.
 
 
 8
 I make this provision because of the manifest uncertainties of the future, particularly as viewed in the light of the present situation of the United States of America and the world generally.
 
 
 9
 Without intending to limit or restrict the Co-Trustees and the Trustee in their discretionary power in respect of terminating the Trust at any time, I state it to be my desire that the Trust shall not be terminated except as provided in (a) or (b) of Article I, unless, only, that in the considered opinion and judgment of the Co-Trustees and the Trustee, the interest of the beneficiary would seriously be impaired otherwise.
 
 
 10
 Maytag died in 1963 at the age of 34. At the time of his death, the First National Bank of Colorado Springs, Colorado was serving as trustee and Leonard S. Sharp and the decedent were serving as co-trustees of both trusts. The power to terminate the trusts had not been exercised prior to decedent's death.
 
 
 11
 The federal estate tax return filed for decedent's estate reflected a taxable estate of $1,146,449.83, which amount did not include the value of the 1944 trusts.
 
 
 12
 The Internal Revenue Service determined that the decedent possessed a general power of appointment at the time of his death and that the trusts were therefore to be included in the decedent's gross estate under 2041. This determination was based on the theory that the decedent, as both a beneficiary and a co-trustee of the 1944 trusts, had the power (in conjunction with the trustee and the other co-trustee) to terminate the trusts and thereby to acquire all of the trust assets for himself.
 
 
 13
 The sole issue on appeal is then whether the discretionary termination provision in the trust instruments vested decedent with a general power of appointment over the trust property.
 
 
 14
 Assuming the existence of a general power of appointment, as defined by 26 U.S.C. 2041(b)(1) there can be no question that the property to which that general power applies is included in decedent's estate for tax purposes. The fact that decedent had not exercised the power prior to his death would not change this. Peoples Trust Co. of Bergen County v. United States, 412 F.2d 1156, 1158 (3rd Cir. 1969). Nor is the fact that decedent shared the power with a corporate trustee or other co-trustee of significance. Jones v. Commissioner, 56 T.C. 35 (1971), aff'd without opinion, 474 F.2d 1338 (3rd Cir.), cert. denied, 414 U.S. 820, 94 S.Ct. 115, 38 L.Ed.2d 53 (1973). Appellants' sole argument in support of their position is that the trust provisions did not under Colorado law give the decedent the power to participate in a decision as co-trustee so as to allow him to distribute the trust property to himself as beneficiary and therefore he did not actually possess a general power of appointment.
 
 
 15
 Though this case arises under the federal estate tax laws, the issue in dispute turns on the proper interpretation of the meaning and effect of the trust provisions, a question governed by Colorado rather than federal law. Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585, 1035 (1940); Peoples Trust Co. of Bergen County v. United States, supra, 412 F.2d at 1159. In construing or interpreting these trusts, the established guiding principle under Colorado law is that the intent of the settlor is to prevail unless that intent is in violation of public policy or statutory enactment. Ketcham v. International Trust Co., 117 Colo. 559, 192 P.2d 426 (1948). Each trust is unique, requiring that it be examined independently in ascertaining the intent of the settlor.
 
 
 16
 Based upon the above general principles and on an examination of the trust instruments, we are convinced that the District Court reached the correct result and that the judgment must be affirmed. The settlor's specific appointment of decedent as a co-trustee, the extensive powers granted to him as a co-trustee under the trust instruments,[4] and the settlor's clear expression of his desire that decedent play an active and authoritative role in management of the trusts once he reached the age of majority, together with the language of the trusts, support the conclusion that settlor intended that decedent participate in any decision to terminate the trusts prior to the time they would expire through disbursements to decedent according to the settlor's preferred schedule.
 
 
 17
 Further support for this conclusion as to the settlor's intent is found in the fact that in those instances when the settlor desired the decedent as co-trustee to be treated differently from the other co-trustees, he made specific provisions for such differing treatment. For example, the trusts specifically provide that the beneficiary as co-trustee cannot be removed from office, as can the other co-trustees. (March trust, Art. III, R. 52; December trust, Art. III, R. 83.) The beneficiary is specifically excluded from receiving compensation for performing functions of a co-trustee, while the other co-trustees are entitled to be compensated. (March trust, Art. IV, R. 52, 53; December trust, Art. IV, R. 83, 84.) And the beneficiary is specifically excluded from participating in a decision to distribute one-fourth of the corpus of the March trust to himself at any time after he became twenty-one (Art. X(16), R. 65).[5]
 
 
 18
 Appellants assert that a Colorado court considering this case would rule taht, absent a very clear and specific expression of intent to the contrary by a settlor, a beneficiary of a trust is prohibited from participating as a trustee in any decision to distribute trust corpus to himself. Appellants concede there are no Colorado cases so holding. They depend on cases from other jurisdictions, primarily New York, to support their assertion that Colorado would adopt such a rule.[6] These authorities are not persuasive in the present context. The New York cases are based on the fact that New York as a statute prohibiting beneficiaries from participating as trustees in decisions to distribute trust assets to themselves. Also, the cases cited by appellants involve instances of outright prohibitions on trustee activities as beneficiaries. Appellants here urge us to establish a Colorado rule of interpretation, not prohibition, which would still permit a beneficiary to act as trustee in the circumstances in question, only if the settlor's intent is clearly expressed. The cases cited do not argue for adoption of such a rule of construction. The more cogent cases which are similar factually reach a result opposite to that urged by appellants. See Strite v. McGinnes, 330 F.2d 234 (3rd Cir.), cert. denied, 379 U.S. 836, 85 S.Ct. 69, 13 L.Ed.2d 43 (1964); Miller v. United States, 387 F.2d 866 (3rd Cir. 1968).
 
 
 19
 The standard to be gleaned from these cases is that a beneficiary who is also a trustee is not prevented from holding a general power of appointment, at least where the settlor grants beneficiary such a power free from obstruction by other adverse parties. No contention is made that such adverse parties are present here. Furthermore, the determination of whether a trustee-beneficiary's power of appointment over trust property is 'general', subjecting his estate to tax liability, is peculiarly a tax law question governed by specific classifying language of the Internal Revenue Code.[7]
 
 
 20
 However, it is not necessary for us to decide that Colorado would or would not adopt such a rule of interpretation, for we regard the intent of the settlor on this question to be clearly reflected in the trust instruments.
 
 
 21
 Appellants further argue that a specific provision in the March trust excluding the beneficiary from participating in an optional decision by the co-trustee to distribute one-fourth of the corpus of that trust to him after his twenty-first birthday is indicative of the settlor's intent to exclude decedent from all decisions regarding disbursement of trust assets to himself. We view this provision rather as an example of the settlor's desire that the decedent be treated differently from the other co-trustees with regard to that particular provision. We see no inconsistency in the settlor's desiring that decedent not participate directly in a decision of the magnitude of distribution of one-fourth of the March trust corpus contemplated to occur soon after decedent's twenty-first birthday, and yet also desiring to insure that decedent would have a say in any decision to terminate the entire trust structure at some undetermined future date.[8]
 
 
 22
 The judgment of the District Court is affirmed and the case is remanded to the United States District Court for the District of Colorado for the making of the adjustments agreed upon by the parties.
 
 
 
 [1]
 Under 2041(b)(1) 'general power of appointment' is defined as 'a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate.'
 
 
 [2]
 Between the ages of 21 and 25, the beneficiary was paid $800,00 per month by the Trustee of the trust. When the beneficiary attained the age of 25, the Trustee was directed to distribute one-third of the corpus to the beneficiary. When the beneficiary attained the age of 30, the Trustee was directed to distribute one-half of the remaining corpus to the beneficiary. The Trustee was empowered to pay over the entire remainder of the trust corpus to the beneficiary when the latter reached the age of 35
 
 
 [3]
 At the time of decedent's death the value of the corpus of each trust was as follows: @March trust $1,558,301.17 @December trust 882,977.02
 
 
 [4]
 The numerous powers granted to decedent as co-trustee were extensively delineated in the District Court opinion. They have therefore not been repeated here
 
 
 [5]
 It should be mentioned that there are provisions in the trusts where the term 'co-trustees' as used by the settlor might be read to mean the co-trustees other than the beneficiary. For example, the trusts prohibit the co-trustees from making direct loans to themselves,' . . . either jointly or separately or under circumstances where they or either of them will personally benefit, directly or indirectly . . ..' (March trust, Art. III, R. 47; December trust, Art. III, R. 78.) This provision appears to specifically contemplate the situation occurring immediately after creation of the trusts, where settlor had appointed two specific co-trustees, with his son not to take office as a third co-trustee for several years, upon reaching majority. Similarly, the provision giving the co-trustees power to determine who are the distributees of the trust estate in case of uncertainty appears to contemplate a situation where the beneficiary has already expired, and thus clearly could not act as a co-trustee. (March trust, Art. III, R. 49; December trust, Art. III, R. 80.) We attribute these sections either to inartful drafting, or to situations where there could be no possible confusion of meaning. They have little effect in contradicting what is otherwise a clear expression on the part of the settlor regarding the intended functions of the beneficiary as co-trustee
 
 
 [6]
 Appellants cite, among others, Rogers v. Rogers, 111 N.Y. 228, 18 N.E. 636 (1888); In re Peabody's Will, 277 App.Div. 905, 98 N.Y.S.2d 614 (2d Dept.1950); Robertson v. DeBrulatour, 188 N.Y. 301, 80 N.E. 938 (1907); Vellacott v. Murphy, 16 F.2d 700 (5th Cir.), cert. denied, 273 U.S. 767, 47 S.Ct. 571, 71 L.Ed. 882 (1927) (dictum); Armington v. Meyer, 103 R.I. 211, 236 A.2d 450 (1967)
 
 
 [7]
 26 U.S.C. 2041, which provides that a decedent's gross estate shall include the value of all property subject to a general power of appointment held by a decedent, excepts the situation in which decedent's power is exercisable only in conjunction with a person having a substantial interest in the property, subject to the power, which is adverse to exercise of the power in favor of the decedent. 2041(b)(1)(C)(ii). That provision also provides that a substantial adverse interest is one such as would enable the co-holder of the power to exercise it in his own favor after the death of the decedent. The mere existence of an independent co-trustee with whom decedent must exercise his power will not remove the property subject to the power from decedent's estate, unless that co-trustee has a substantial interest adverse to decedent's exercise in his own favor. Even where the co-trustee's remuneration is dependent on the existence and size of the trust corpus, the co-trustee does not have a substantial adverse interest. The co-trustee's interest must be in the trust property itself in order for it to be adverse to that of the decedent who is co-trustee-beneficiary. 2041(b)(1)(C)(ii); Miller v. United States, supra, 387 F.2d at 870. See also Jones v. Commissioner, supra
 
 
 [8]
 Further substantiation of this analysis may be found in the same Article of the March trust upon which appellants base their argument. Art. VIII of the trust provides that the decedent shall receive monthly payments of $800.00 from the trust corpus between his twenty-first and twenty-fifth birthday. At twenty-five, he would then receive a distribution of one-third of the trust. However, in, art. X(2), the settlor provided that the co-trustees could vary these monthly payments to some degree. He did not specifically exclude decedent from acting as co-trustee in this decision, as he did in Art. X(16). Arguably the settlor felt that decedent would have the maturity to participate in a decision affecting disbursements to himself of this relatively small amount, but not in a decision affecting a substantial segment of the corpus