The FIRST NATIONAL BANK OF DENVER, Trustee of the Barry M. Sullivan Trust, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 78–1339.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 26, 1979.

Decided May 11, 1981.

Marilyn E. Brookens, Atty., Tax Div., Dept. of Justice, Washington, D. C. (M. Carr Ferguson, Asst. Atty. Gen., and Gilbert E. Andrews and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief), for defendant-appellant.

W. David Pantle of Dawson, Nagel, Sherman & Howard, Denver Colo. (Douglas M. Cain and David Thomas, III, Denver, Colo., on brief), for plaintiff-appellee.

Before SETH, Chief Judge, HOLLOWAY, Circuit Judge, and BROWN, District Judge.*

HOLLOWAY, Circuit Judge.

The First National Bank of Denver, as the executor of the estate of the decedent Barry M. Sullivan and trustee of the Barry M. Sullivan trust, brought this suit for refund of $338,472 in federal estate tax. The only issue on this appeal is whether the decedent possessed a general power of appointment over the corpus of the Barry M. Sullivan trust so that it was includable in decedent's gross estate. Other issues were settled by agreement in the trial court.

The case was tried without a jury. The record consists of the testimony of one witness, a number of documents, and facts stipulated to by the parties. The district court made oral findings and conclusions and entered judgment for the plaintiff taxpayer in the amount of $328,946 plus interest, and the Government appeals.

---

I

The subsidiary facts are not in dispute. In 1913 after the death of decedent's father, decedent's mother, Mary Morey Sullivan, married Baron Albrecht von Schroeder, a German citizen then living in the United States. As a result, Mary von Schroeder lost her American citizenship until 1938. Pursuant to the Trading with the Enemy Act of 1917, the Alien Property Custodian determined in 1918 that Mrs. von Schroeder was an enemy of the United States and demanded that her father turn over all her property; this demand was complied with. This property was vested in the Custodian until September 1920, at which time the principal was returned; interest and Liberty Bond coupons were not returned until January 1931.

On April 7, 1932, and April 8, 1932, Mrs. von Schroeder created two revocable trusts in which she retained income interests for life. (Exs. 3, 4). The trust provisions were essentially identical. Upon her death half the income from the trusts was to go to her husband, if surviving, for life. The other half of the trust was to be divided among her three children and their descendants. The two daughters were to receive life estates, with subsequent interests in their descendants. The decedent, on the other hand, was to be given his share of the trust corpus outright. In 1938 and 1939 Mrs. von Schroeder amended the two trusts so as to give Barry M. Sullivan an income interest, identical to those of his sisters, rather than a distribution of principal;[1] the two trusts were consolidated in 1939. (Exs. 7, 8).

On November 6, 1945, the consolidated 1932 trusts were revoked and replaced by a new revocable trust. (Exs. 48, 14). The new trust was similar to the old ones. It provided that the income was to go to the settlor for life. At her death the trust was to be divided into three equal funds, one for each of the children.

---

* The Honorable Wesley E. Brown of the United States District Court for the District of Kansas, sitting by designation.

1. This change was apparently motivated by the fact that Barry Sullivan was in the process of obtaining a divorce.

Each child was to receive a life estate, with eventual distribution of the principal to the grandchildren or their descendants. As to each child's fund, the trustee was empowered to make distribution of principal to the child in such amounts as it "in its sole and absolute discretion deems necessary or proper for [his or her] support, maintenance, welfare, comfort or happiness, taking into consideration all other means of support available to said [beneficiary] . . . ." (Ex. 14(A) at 2–3).

The original trustee of the 1945 trust, as in the case of the 1932 trusts, was the International Trust Company. As amended on December 10, 1951, Article V of the trust provided for revocation or amendment of the trust and the change, resignation, or merger of the trustee as follows:

> This trust may be revoked, or any of the income or principal assets thereof withdrawn by the Grantor at any time or times by written notice signed by the Grantor and delivered to the Trustee during the Grantor's lifetime. The Grantor may add to the assets of the trust at any time or times by the delivery to, and acceptance by, the Trustee of further or additional property or securities. The Grantor may also amend or supplement this instrument in any particular or particulars at any time or times by an instrument in writing signed by the Grantor and the Trustee and filed with the Trustee during the Grantor's lifetime. <u>The Trustee may, at its election, resign, and the Grantor may at any time during her lifetime change the Trustee and, after her death either the Grantor's brother, John W. Morey, or her son, Barry Morey Sullivan, may at any time during their lifetimes change the Trustee. Should the Trustee or any successor as trustee merge or consolidate with any other corporation, then the corporation with which the Trustee has merged or consolidated shall act in its place and stead. Should the Trustee resign and elect to appoint a succes-</u>

sor, then such other bank or trust company in the City and County of Denver having a capital and surplus of at least $1,000,000 as the retiring Trustee nominates shall act in its place and stead. In all cases, the successor in trust shall have all the powers, privileges and discretion herein given unto said The International Trust Company. The resignation of the trustee and/or the nomination by it of a successor may be effected by notice in writing to the Grantor, if living, otherwise to the adult beneficiaries at the time entitled to the income of the trust estate. The designation of a new trustee by the Grantor during her lifetime, or thereafter by either the said John W. Morey or Barry M. Sullivan, may be effected by an instrument in writing nominating the new trustee, signed by the Grantor or either the said John W. Morey or Barry Morey Sullivan, as the case may be, accepted by the new trustee and filed with the trustee to be removed, and shall be effective upon such filing. (Emphasis added).[2]

Ex. 14(E). Pursuant to this provision, the First National Bank of Denver became the trustee after the International Trust Co. merged with it in 1958.

We turn to the parties' contentions and the findings and conclusions of the trial court.

## II

By the terms of the 1945 trust instrument as amended in 1951 three separate funds— one for each child—were created on Mrs. von Schroeder's death in 1954. The Government contends that Barry Sullivan, at the time of his death in 1973, possessed a general power of appointment as defined in § 2041 of the Internal Revenue Code over his fund, the Barry M. Sullivan trust.[3] This would render the trust corpus includable in his estate.

---

2. The meaning and effect of the underlined language are the principal questions before us.

3. A general power of appointment as defined in § 2041 is a power "exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate."

More specifically the Government asserts that pursuant to his power to change the trustee after his mother's death, decedent could have removed the trustee and named himself as the new trustee. As trustee, he would have had absolute discretion under the terms of the trust to distribute principal "for his support, maintenance, welfare, comfort or happiness ...." This power, the Government argues, would be a general one as it would not be limited by "an ascertainable standard relating to the health, education, support, or maintenance of the decedent" under § 2041(b)(1)(A) of the Code, citing Treas.Regs. § 20.2041–1(c)(2);[4] *see also Miller v. United States*, 387 F.2d 866, 869 (3rd Cir.). The decedent's power to appoint himself as trustee, combined with the trustee's power to distribute the corpus to the decedent, constitutes a general power of appointment under Regs. § 20.2041–1(b)(1), according to the Government.[5]

The plaintiff taxpayer argues that decedent Barry Sullivan could not have appointed himself trustee, that under the terms of the trust he could change the trustee but could only replace it with a bank or trust company in Denver with a capital and surplus of at least $1,000,000, and that since the decedent had no general power of appointment over it, the fund in question was not includable in his estate.

The trial court's oral findings incorporated the stipulated facts. The judge found that the decedent was limited to appointing a corporate trustee. He held that this conclusion was mandated by the language of the trust instrument, which he did not consider to be ambiguous. He also held that the extrinsic evidence presented at trial supported the conclusion that the intent of the grantor was that the decedent could only name a corporate trustee.[6] Thus the court concluded that no general power of

appointment was held by the decedent and ruled for the taxpayer.

### III

■ The dispositive issue is whether decedent had the power to name himself as trustee or could only replace the trustee with another corporate trustee. And "[t]hough this case arises under the federal estate tax laws, the issue in dispute turns on the proper interpretation of the meaning and effect of the trust provisions, a question governed by Colorado rather than federal law." *Maytag v. United States*, 493 F.2d 995, 998 (10th Cir.). Under Colorado law, "the intent of the settlor is to prevail unless that intent is in violation of public policy or statutory enactment." *Id.* at 998, *citing Ketcham v. International Trust Co.*, 117 Colo. 559, 192 P.2d 426 (Colo.).

The Government strenuously argues that there is no explicit limitation preventing the decedent from appointing himself as trustee, and that he could thus do so under the general wording of the trust instrument. It is true that the only explicit limitation covers the case in which the trustee resigns and elects to appoint a successor; the trustee is limited to naming "such other bank or trust company in the City and County of Denver having a capital and surplus of at least $1,000,000." The district court's holding imputed the same limitation to the situation in which the trustee could be replaced by the decedent, contrary to the Government's contention that it only restricts a resigning corporate trustee's choice of successor.

The district court relied in part on the fact that the trustee was consistently referred to in the trust instrument by means of the neuter pronoun "it", thus implying that the trustee must be a corporation rath-

---

**4.** The Regulation provides in pertinent part that "[a] power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard."

**5.** *Cf. Loughridge's Estate v. Commissioner*, 183 F.2d 294, 300 (10th Cir.), *cert. denied*, 340 U.S. 830, 71 S.Ct. 67, 95 L.Ed. 609 (the decedent's power to appoint himself trustee, combined

with the trustee's power to terminate the trust, constituted a power to revoke under § 811(d)(2) of the 1939 Code).

**6.** At trial, counsel for both parties agreed that there was doubt as to whether the instrument itself was ambiguous and agreed that extrinsic evidence should be admitted. (III R. at 26–29).

er than a natural person. The pronoun problem was involved in *Mathey v. United States*, 491 F.2d 481 (3rd Cir.) (en banc). There the court held that under New York law the grantor had the power to replace the trustee and appoint herself as successor; since the trustee had the power to accelerate distribution of the corpus, the grantor had effectively retained a power to "alter, amend, revoke, or terminate" the trust under § 2038 of the Code. The Third Circuit sustained as not clearly erroneous the trial court's finding that use of the neuter pronoun did not signify an intent on the grantor's part to allow only a corporation to be a successor trustee, citing expert testimony which was admitted. *Id.* at 484. *See also Estate of Edmonds v. Commissioner*, 72 T.C. 970, 987.

The trial court distinguished *Mathey* on the ground that the word "it" in the trust there "refers only to the existing trustee, and it does not refer to a successor trustee." (IV R. at 13); here, on the other hand, the word "it" refers to successor trustees as well as the original trustee. We are not persuaded by this distinction. However, we do not feel impelled to hold for the Government on the basis of *Mathey* and the Government's arguments because of other significant wording and omissions in the trust instrument, not involved in *Mathey*.

First, as noted by the trial judge, here there is no provision for appointment of a successor in case of the death or resignation of an individual trustee. (*Id.* at 10–11). The provision that a resigning trustee may appoint "*such other bank or trust company* ..." as successor only makes sense if the trustee is itself such a bank or trust company. Although "a court will not permit a trust to fail for want of a trustee," *Jeffreys v. International Trust Co.*, 48 P.2d 1019, 1022 (Colo.), it is unlikely that a settlor would carefully provide for the event of the merger or resignation of a corporate trustee, but fail to make any provision for the appointment of a successor to an individual trustee if it was intended that there could in fact be an individual trustee.

This inconsistency becomes more apparent when consideration is given to the provision in Article V that "*[i]n all cases*, the successor in trust shall have all the powers, privileges and discretion herein given unto said The International Trust Company. (Emphasis added)." These powers include the right to appoint a successor. However, as explained above, an individual trustee would not have the power to appoint his or her successor, and thus would not have "all the powers" of the Trust Company. *See Durst v. United States*, 559 F.2d 910, 912–13 (3rd Cir.) (holding that after examining the trust instrument as a whole, interpreting it to permit the settlor to appoint herself as trustee would lead to inconsistencies in the successorship provision by requiring her to take action after her death).

Other provisions cited by the plaintiff taxpayer and the trial court as indicating that it would be inconsistent to allow appointment of an individual trustee are of less significance. The trial judge emphasized the provision in Article V that if the trustee were to merge or consolidate with another corporation, the new corporation would take over as trustee, and stated that "[y]ou don't merge or you don't consolidate with an individual." (IV R. at 8). We cannot agree that the fact that the trust provides for this one contingency which is possible only in the case of a corporate trustee is strong evidence that the trustee must be a corporation. We feel that the most we can say is that the provision lends some support to the taxpayer's position, considering the instrument and the evidence as a whole.

The trust instrument also provides that after the death of the settlor, the trustee may not dispose of any trust assets or make any investments without the consent of Barry Sullivan or the settlor's brother, John Morey. (Ex. 14(A) at 7). The Government argues that this broad grant of power to the decedent indicates that the grantor intended that he also have the power to name himself trustee. (Brief for Appellant at 31). The Government also points to the fact that on the day that Mrs. von Schroeder executed the trust she also granted a

power of attorney enabling John Morey or her son to "exercise every right, power and authority reserved to or conferred upon me" by the trust which included the power of revocation. (Ex. 14(B)). We are not persuaded by these arguments. The mere fact that the grantor gave her son the power to oversee management of the trust assets and to exercise other powers during her lifetime does not demonstrate an intent to allow the decedent actually to name himself trustee, which would give him the very significant additional power to appropriate trust principal for himself.

We cannot agree that the trial court erred in finding that the trust instrument itself indicates an intent to restrict decedent to naming a corporate successor trustee. The clearest indications of this intent are the successor clause itself and the failure to provide for a means of appointing a successor to an individual trustee. Nevertheless, the instrument is not free from doubt on this point and we agree that the trial court acted properly in considering the extrinsic evidence.

The trial judge found that the record established that from sometime in the early 1940's until 1958 the merger of the International Trust Company with the First National Bank of Denver was under active consideration, as testified to by Mr. Richard Brown. The judge found that the International Trust Company was organized as a trust company although it also conducted banking activities, that the First National Bank had no trust department, and that the management and control of the Trust Company and the Bank "was almost a completely common management". (IV R. at 8–9). The court found that the Trust Company was openly and actively attempting to have provisions included to protect its interests and its continued management and control of trusts it was managing, should the contemplated merger with the Bank occur. The court concluded (IV R. at 9):

The record demonstrates that the language here in question was what one commonly refers to as boiler-plate language, and I find that the language was inserted in the trust agreement largely as a matter of habit, custom and practice, to protect the International Trust Company and the First National Bank in the event of the merger.

I find that the language was put in there for that primary purpose and that there was no intention on the part of anyone to provide for the appointment of Barry M. Sullivan, an individual, as a successor trustee, under any circumstances.

It might be said that the finding that the merger provision was "boiler plate" supports the Government's position, that if that clause was simply to protect the interests of the Trust Company, then the following limitations on appointment of successor trustees by the corporate trustee were not intended also to restrict the range of choice available to decedent as an individual. The provisions were, however, all run together in the paragraph and closely related. The limitation on appointment of a successor trustee to a bank or trust company in Denver having capital and surplus of at least $1,000,000 is followed immediately by the proviso that "[i]n all cases" the successor in trust shall have the powers, etc., of the International Trust Company. Considering the entire trust instrument together with the extrinsic evidence we find no error in the trial court's conclusion that there was no intention to provide for Mr. Sullivan to appoint himself as a successor trustee.

The Government also argues that creation of the trust was motivated by Mrs. von Schroeder's unpleasant experiences with the Alien Property Custodian. Consequently, she intended to create a trust which maximized family control, including the power of her brother and son to change the trustee and, if necessary, to become trustee. (Brief for Appellant at 31–33). This inference is highly speculative. The record does not indicate that creation of the trust was motivated by fear of a future seizure of her property by the Alien Property Custodian. A memorandum in the International Trust Company files, written prior to execution of the 1932 trusts, and cited by

the Government, indicates a concern with avoiding German inheritance and tax laws, but makes no mention of the Alien Property Custodian. (Ex. 1 at 1–2). Moreover, as the district court notes, there was no evidence that the grantor or any member of her family was aware of the contents of this memorandum. (IV R. at 10).

In sum, we find no error in the trial court's findings and conclusions that there was no intention to provide for the decedent to appoint himself as a successor trustee. Since he had no general power of appointment over the trust corpus it was not includable in his estate and plaintiff is entitled to recover the tax paid.

AFFIRMED.