ESTATE OF IRVIN I. WILSON, JR., DECEASED, CATHERINE L. WILSON, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Wilson
Docket No. 3524-90
United States Tax Court
T.C. Memo 1992-479; 1992 Tax Ct. Memo LEXIS 502; 64 T.C.M. (CCH) 576; August 24, 1992, Filed *502 Decision will be entered under Rule 155. During life, D and W placed their community property into a revocable inter vivos trust. Under the terms of the trust, after D died, W was the sole trustee, and she was entitled to all income during her life. The trust also gave the trustee complete discretionary power to appoint corpus. Should W cease to act as trustee, she alone had the power to appoint and dismiss any successor trustees. Upon the death of W, the trust was to distribute any remaining corpus to D's and W's children. Held: The trust satisfies the terms of sec. 2056(b)(5), I.R.C., and D's estate is entitled to a deduction for the value of D's interest in the trust under sec. 2056(a), I.R.C.
For Petitioner: Jay I. Bartz, Yale F. Goldberg, Michael W. Murphy, and David R. Frazer. For Respondent: Mary P. Kimmel. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined a deficiency of $ 3,099,426 in petitioner's Federal estate taxes. After a concession by petitioner, the sole issue for decision is whether decedent's interest in a trust, which passed to his wife upon his death, qualifies for the marital deduction under section 2056(a). [1]
*503 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. The petitioner is the Estate of Irvin Ivy Wilson, Jr., deceased, Catherine L. Wilson, personal representative. Irvin Ivy Wilson, Jr. (decedent), died on April 28, 1986. Decedent was a farmer in Phoenix, Arizona, at the time of his death. Petitioner timely filed a Federal estate tax return on January 28, 1987, with the Ogden Service Center. Prior to his death, decedent executed a series of documents for the purpose of estate administration. The first document relevant to this proceeding is a will entitled "Last Will and Testament of Ivy Wilson, Jr." This will was executed on January 20, 1981, and provides in pertinent part: SIXTH: All the rest, residue and remainder of the property [after payment of all estate taxes], both real and personal, of whatsoever nature and wheresoever situate, which I may own or otherwise have the right to dispose of by Will at the time of my death, I give, devise and bequeath to my Trustee hereinafter named, and to his or her successor, IN TRUST NEVERTHELESS, for the following *504 uses and purposes: (a) During the lifetime of my wife, CATHERINE L. WILSON, I direct my Trustee to pay to her the net income from the Trust Estate and such sums from the principal as my Trustee shall deem necessary or advisable in addition to such net income for her support, comfort and welfare. * * * EIGHTH: I hereby nominate, constitute and appoint my wife, CATHERINE L. WILSON, as and to be the Trustee of the Trust hereunder * * *. * * *In the event my said wife shall be unable or unwilling to act as Trustee* * *or shall resign, then and in that event only I appoint as Alternate Trustees* * * my daughter, JEWEL WILSON, and my sons, IVY WILSON III and STEWART WILSON. No Fiduciary shall be required to provide bond or other security in order to qualify to act as such in any jurisdiction. * * * TENTH: Inasmuch as the continued welfare of my wife is of primary and paramount concern to me, I direct that the provisions contained in this Will be liberally construed and applied to her interest and for her benefit, and that in the event of any doubt or conflict of interests, the right and interests of all others hereunder be dealt with by my Personal Representative and Trustee *505 as subordinate and secondary to the rights and interests of my said wife. The second document relevant to this proceeding is a codicil to the aforementioned last will and testament. This document, executed on December 22, 1983, states in pertinent part: I give, devise and bequeath all of my property, whether real or personal and wheresoever situated, to my wife, CATHERINE L. WILSON. The aforesaid is subject to the exception that the portion of my estate to which there can be applied the Statutory Credit shall be distributed In Trust as provided in Paragraph SIXTH of my Last Will and Testament of January 20, 1981. This provision applies to the Statutory Credit only. Wherever the provisions of my Last Will and Testament of January 20, 1981, conflicts with this Codicil, this Codicil shall control. By November 1985, decedent's health had declined, and he believed that his life would end soon. At this time, decedent, his family, and his advisers held several meetings to review decedent's estate plan and determine if it needed to be changed. Decedent understood that under his estate plan, all his assets would pass outright to his spouse, save an amount which would qualify for the *506 unified estate tax credit. Although decedent was generally satisfied that this plan reflected his intent, he had several ancillary concerns, such as his desire to avoid probating his property, which he did not feel his plan addressed. On December 2, 1985, decedent and his wife executed a document entitled "Revocable Trust for Irvin Ivy Wilson, Jr." This document was intended to address decedent's ancillary estate planning concerns. In pertinent part, this document provides: SECOND: The purpose of this Trust shall be to take title and possession of all assets owned by IRVIN IVY WILSON, JR. and CATHERINE LOUISE WILSON, his wife, residing in Arizona, a community property state. * * * FOURTH: The Trustees of the Trust shall be: IRVIN IVY WILSON, JR. and CATHERINE LOUISE WILSON. Should both of the Trustees be unable to serve as Trustees, then the beneficiaries shall select the Trustee(s). The beneficiaries shall have the power to remove the Trustee(s) selected by the beneficiaries. FIFTH: In the event of the death of IRVIN IVY WILSON, JR., all property held by the Trust shall remain in the Trust for the benefit of CATHERINE LOUISE WILSON. Upon the death of CATHERINE *507 LOUISE WILSON, the property held by the Trust shall pass equally to the three (3) children of IRVIN IVY WILSON, JR. and CATHERINE LOUISE WILSON, or to their estate(s). The Trust may be retained by the beneficiaries for ease of administration. * * * SEVENTH: All net income received by the trust, shall be distributed in cash to the beneficiaries or to their account(s) as determined by the trustees. * * * NINTH: Section 1 "Duties, responsibilities and powers of the Trustee(s)" is an integral part of this Trust. Attached to the trust was a separate document which was also executed by decedent and Mrs. Wilson. This document is the "Duties, responsibilities and powers of the Trustee(s)" document (duties document) referred to in paragraph 9 of the trust. In pertinent part, this document provides: The following are the duties, responsibilities, and powers of the Trustee of the REVOCABLE TRUST FOR IRVIN IVY WILSON, JR.
SECTION 1: The trustee shall hold, manage, care for and protect the trust property and shall have the following powers and, except to the extent inconsistent herewith, those now or hereafter conferred by law: * * * (f) To borrow money from any lender, *508 extend or renew any existing indebtedness and mortgage or pledge any property in the trust; (g) To sell at public or private sale, contract to sell, convey, exchange, transfer and otherwise deal with the trust property and any reinvestment thereof, and to sell put and covered call options, from time to time for such price and upon such terms as the trustee sees fit; * * * (j) To distribute income and principal in cash or in kind, or partly in each, and to allocate or distribute undivided interests or different assets or disproportionate interests in assets, and no adjustment shall be made to compensate for a disproportionate allocation of unrealized gain for federal income tax purposes; to value the trust property and to sell any part or all thereof in order to make allocation or distribution; no action taken by the trustee pursuant to this paragraph shall be subject to question by any beneficiary; * * * (p) To perform other acts necessary or appropriate for the proper administration of the trust, execute and deliver necessary instruments and give full receipts and discharges. Shortly after executing the trust instrument, decedent and Mrs. Wilson transferred community property, *509 consisting of valuable farmland, to the trust. The trust instrument identifies only decedent as the trust grantor. On brief, the parties agree that both decedent and Mrs. Wilson were the grantors of the trust. Decedent and Mrs. Wilson intended the trust to be revocable by decedent and Mrs. Wilson during their lives and to be fully revocable by Mrs. Wilson upon decedent's death. Decedent and Mrs. Wilson also intended that Mrs. Wilson would be the sole income beneficiary after decedent's death. The trust of December 2, 1985, and the attached duties document were not intended to alter decedent's basic estate plan. OPINION The issue for decision is whether decedent's interest in the revocable trust qualifies for the marital deduction under section 2056(a). Petitioner's position is that the trust was entirely revocable by Mrs. Wilson after the death of her husband and therefore qualifies for the marital deduction under section 2056(a). Respondent's position is that the trust instrument only allows Mrs. Wilson to revoke the trust with respect to her half of the community property which funded the trust. Respondent argues that Mrs. Wilson had only a terminable interest in the other *510 half of the trust corpus. The positions of the parties are based on divergent interpretations of the trust instrument. We must interpret the trust instrument under State law and determine the rights and duties flowing from it. Estate of Ellingson v. Commissioner, 964 F.2d 959 (9th Cir. 1992); Estate of Nicholson v. Commissioner, 94 T.C. 666, 672-673 (1990). Under Arizona law, when a trust is created by a written instrument, the grantor's intent is ascertained from the express language of the instrument, and a court will not go outside the instrument in an attempt to give effect to what it conceives to be the grantor's actual intent or motive. State ex rel. Goddard v. Coerver, 412 P.2d 259, 262 (Ariz. 1966). If, however, the grantor does not plainly express his intent, or if he uses ambiguous language, a court may construe the instrument consistent with the grantor's intent. Id. at 262-263. The grantor's intent is determined by, among other things, the circumstances surrounding the execution of the trust instrument. Id. The court places itself in the position of the grantor at the time of creation of the trust and interprets his words and deeds in light *511 of his environment at that time. Id. at 263. In the case of an ambiguity, courts look at the circumstances surrounding the execution of the instrument to determine what the grantor meant by what he said, not what he intended, but failed, to say. In re Estate of Blacksill, 602 P.2d 511, 513 (Ariz. Ct. App. 1979). In the instant case, the language used in the trust instrument is ambiguous and does not plainly express decedent and Mrs. Wilson's intent. The trust is entitled "Revocable Trust for Irvin Ivy Wilson, Jr.," but, with the possible exception of the broad powers given to the trustees, there are no specific provisions clearly delineating the power to revoke. The trust identifies decedent as the only grantor, but even respondent acknowledges that Mrs. Wilson was also a grantor. No specific trust provisions support respondent's primary position that Mrs. Wilson could only revoke the trust to the extent she contributed property to it. Decedent and Mrs. Wilson are the designated trustees. In the event that neither is able to serve, the trust gives the "beneficiaries" the right to select and remove successor trustees. However, the trust does not specifically define *512 "beneficiaries" for this purpose. Given these ambiguities, we will examine the circumstances surrounding the execution of the trust instrument in interpreting the trust and determining whether petitioner meets the statutory requirement for the marital deduction. One of the main reasons decedent created the trust was to avoid probate. Decedent's wife, his son, and his accountant all provided uncontroverted testimony to this effect. Their testimony also establishes that decedent intended the trust to be revocable by either himself or his wife and that after his death, his wife would have complete power to revoke. At the time he executed the trust, decedent believed his estate plan provided that all his assets, save the amount qualifying for the unified estate tax credit, were to pass to his wife. Decedent did not want to alter this overall estate plan. The trust designates decedent and Mrs. Wilson as co-trustees. After decedent's death, Mrs. Wilson became the sole trustee. Pursuant to subparagraph (j) of the duties document, Mrs. Wilson, as trustee, had unfettered discretion to appoint the property to herself. She could exercise this power without fear of any reprisal from *513 any beneficiary. However, respondent argues that if Mrs. Wilson ceases being the trustee, her unfettered power also ceases. The trust instrument gives the "beneficiaries" the power to appoint a successor trustee but does not define the term "beneficiaries". Respondent argues that the "beneficiaries" entitled to appoint a successor trustee include both Mrs. Wilson and her children. We find respondent's interpretation to be inconsistent with the circumstances surrounding the execution of the trust and decedent's existing estate plan, which indicate that decedent intended the trust to be fully revocable by Mrs. Wilson after his death. Giving the power to appoint the successor trustee to both Mrs. Wilson and her children is inconsistent with this intent. We believe that the term "beneficiaries" in this part of the trust instrument refers to decedent and Mrs. Wilson, the beneficiaries of the trust at the time of execution. Under this interpretation, the power to appoint a successor trustee after decedent's death would reside in Mrs. Wilson alone. In the event that Mrs. Wilson's status as trustee terminated, she alone had the power to designate a new trustee. This is the only interpretation *514 consistent with decedent's intent to vest in his wife the exclusive power to revoke the trust. Paragraph 7 of the trust provides that all net income shall be distributed in cash to the beneficiaries or to their accounts. Respondent argues that the plural form "beneficiaries" used in paragraph 7 gives the children an interest in trust income during Mrs. Wilson's life. This interpretation is inconsistent with paragraph 5, which explicitly states that "In the event of the death of IRVIN IVY WILSON, JR., all property held by the Trust shall remain in the Trust for the benefit of CATHERINE LOUISE WILSON." The children's interest is limited to a right to receive a liquidating distribution of any corpus that remains in trust after the death of Mrs. Wilson. [2] As with the power to appoint the successor trustee, we believe that the term "beneficiaries", as used in paragraph 7, is properly interpreted to include decedent and Mrs. Wilson while both of them were alive, and only Mrs. Wilson after decedent's death. *515 We find that after decedent's death, Mrs. Wilson was the sole trustee of the trust, that during her life she had an absolute right to all trust income and was free to remove all corpus from the trust, and that in the event she was no longer the trustee, she had the power to appoint and remove any successor trustee. Having interpreted the trust instrument, we must now decide whether the decedent's interest which passed to Mrs. Wilson qualifies for the marital deduction. Section 2056(a) provides in part: (a) Allowance of Marital Deduction. -- * * * the value of the taxable estate shall, except as limited by subsection (b), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse* * *. Section 2056(b)(1) generally prohibits a deduction for interests in property passing to a surviving spouse if an interest in the same property also passes to someone other than the surviving spouse. [3] These interests are commonly referred to as "nondeductible terminable interest." However, section 2056(b)(5)(B) provides an exception to section 2056(b)(1) for any interest *516 passing from the decedent which meets the requirements set out in section 2056(b)(5). In order to meet the requirements *517 of section 2056(b)(5), the interest must satisfy the following five requirements: (1) The surviving spouse must be entitled for life to all of the income from the entire interest or a specific portion of the entire interest, or to a specific portion of all the income from the entire interest. (2) The income payable to the surviving spouse must be payable annually or at more frequent intervals. (3) The surviving spouse must have the power to appoint the entire interest or the specific portion to either herself or her estate. (4) The power in the surviving spouse must be exercisable by her alone and (whether exercisable by will or during life) must be exercisable in all events. (5) The entire interest or the specific portion must not be subject to a power in any other person to appoint any part to any person other than the surviving spouse. [Sec. 20.2056(b)-5(a), Estate Tax Regs.] Respondent argues that the first requirement is not satisfied because Mrs. Wilson is not entitled to all income during her life. This argument is based on the reference in paragraph 7 to "beneficiaries" and respondent's interpretation that this reference requires the trustee to distribute income *518 to both Mrs. Wilson and the children. We have already rejected this interpretation. Respondent also argues that Mrs. Wilson is not entitled to all income because Arizona fiduciary law imposes on the trustee a duty of loyalty to the Wilson children requiring the trustee to withhold income from Mrs. Wilson for the benefit of the children. Respondent cites no authority to support this position. [4] We can discern no reason why the trustee would be required to withhold income from the sole income beneficiary in order to benefit individuals whose only interest in the trust is the right to receive a liquidating distribution of any corpus that remains after Mrs. Wilson's death. The trust instrument names decedent and Mrs. Wilson as trustees and requires the trustees to distribute income exclusively to decedent and Mrs. Wilson. Upon her husband's death, Mrs. Wilson becomes both the only trustee and the only income beneficiary. She also had the exclusive power to remove and replace any trustee who succeeded her as trustee. Under these circumstances, we find that Mrs. Wilson was entitled to all income from the trust during her life. *519 Respondent argues that the second requirement of section 2056(b)(5) is not satisfied because the trust instrument does not explicitly require distribution of income at least annually. Paragraph 7 of the trust provides that the trustee "shall" distribute income to Mrs. Wilson, but the instrument is silent as to when these distributions are to be made. A trustee is under a duty to exercise discretion given him under the trust instrument in good faith, so as to protect the interest of all beneficiaries. In re Trust Estate of Wills, 448 P.2d 435, 439 (Ariz. Ct. App. 1968). In this case, after decedent's death, only Mrs. Wilson had an interest in trust income. Respondent's regulations provide: silence of a trust instrument as to the frequency of payment will not be regarded as a failure to satisfy the [requirement] * * * that income must be payable to the surviving spouse annually or more frequently unless the applicable law permits payment to be made less frequently than annually. * * * [Sec. 20.2056(b)-5(e), Estate Tax Regs.] We are unaware of any Arizona statute or case permitting payments to be made less frequently than annually. We believe Arizona courts would follow *520 the general rule that the trustee is required to make payments of income at reasonable intervals. 1 Restatement, Trusts 2d, sec. 182 (1959); 2A Scott, Trusts, sec. 182 (4th ed. 1987); Bogert, Trusts and Trustees, sec. 814 (2d ed. 1981). Given the circumstances under which the trust was executed, the fact that the trustee was required to distribute all income to Mrs. Wilson, and the fact that Mrs. Wilson would either be the trustee or have the power to remove and appoint any trustee who did not distribute income as she so desired, we do not believe that Arizona law would permit a trustee to withhold income from Mrs. Wilson for periods in excess of one year. [5] We find that Mrs. Wilson was entitled to the payment of income at least annually.[6]
*521 Section 20.2056(b)-5(f)(8), Estate Tax Regs., supports our conclusion that the first two requirements are satisfied. That section provides that the first two requirements are satisfied if the surviving spouse has "such command over the income that it is virtually hers." Our interpretation of the instrument in this case clearly requires us to conclude that Mrs. Wilson's command over the income made it virtually hers. Respondent also argues that the last three requirements of section 2056(b)(5) are not satisfied. We disagree. The last three requirements relate to the surviving spouse's power to appoint corpus. After decedent's death, Mrs. Wilson had the power to appoint corpus to herself pursuant to paragraph (j) of the powers document. Mrs. Wilson could exercise this power alone and in all events, and her power to appoint is not subject to a power in anyone else. One of the main reasons section 2056(b)(5) requires the surviving spouse to receive a power to appoint corpus to herself, is to ensure that any property qualifying for the marital deduction will subsequently be subject to estate or gift tax in the case of the surviving spouse. The predecessor of section 2056(b)(5) *522 was enacted as part of the Revenue Act of 1948, ch. 168, tit. II, sec. 361, 62 Stat. 110. The supplementary report of the Senate Committee on Finance explains that an interest qualifying for the marital deduction under what is now section 2056(b)(5) was deductible because: the surviving spouse, by reason of her right to the income and a power of appointment, is the virtual owner of the property. This provision is designed to allow the marital deduction for such cases where the value of the property over which the surviving spouse has a power of appointment will (if not consumed) be subject to either the estate tax or the gift tax in the case of such surviving spouse. [S. Rept. 1013, 80th Cong., 2d Sess. (Part 2) 16 (1948), 1948-1 C.B. 331, 342; emphasis added.] As we stated in Estate of Smith v. Commissioner, 66 T.C. 415, 424 (1976), affd. 565 F.2d 455 (7th Cir. 1977): "The rationale of this is clear; by virtue of a power of appointment the value of the property will be taxable in the estate of the surviving spouse under section 2041 of the Code." [7]
*523 In the instant case, the trust corpus will be subject to either estate tax or gift tax in the case of the surviving spouse. This is because Mrs. Wilson has the unfettered power to appoint corpus. If, during her life, she releases this power or exercises it in favor of someone else, she will be subject to gift tax. Sec. 2514(b). [8] If she dies without exercising her power, she will be subject to estate tax under section 2041(a). [9] Respondent argues that because the trust contemplates someone other than Mrs. Wilson serving as trustee, Mrs. Wilson may not have the power to appoint in all events. However, as previously explained, Mrs. Wilson also has the sole power to discharge any successor trustee and appoint the replacement. Under section 20.2041-1(b)(1), Estate Tax Regs., and section 25.2514-1(b)(1), Gift Tax Regs., Mrs. Wilson's power to discharge and appoint successor trustees results in the attribution of any successor trustee's power to appoint corpus to her. Section 20.2041-1(b)(1), Estate Tax Regs., [10] provides: The term "power of appointment" includes all powers which are in substance and effect powers of appointment regardless of the nomenclature used in creating *524 the power * * *. * * *A power in a donee to remove or discharge a trustee and appoint himself may be a power of appointment. For example, if * * *the trustee* * * has the power to appoint the principal of the trust for the benefit of individuals including himself, and the decedent has the unrestricted power to remove or discharge the trustee at any time and appoint any other person including himself, the decedent is considered as having a power of appointment. However, the decedent is not considered to have a power of appointment if he only had the power to appoint a successor, including himself * * *, without an accompanying unrestricted power of removal. * * * Thus, even though someone other than Mrs. Wilson may serve as trustee, the power to appoint corpus will nevertheless be attributed to her and subject to transfer tax. First National Bank of Denver v. United States, 648 F.2d 1286, 1289 (10th Cir. 1981). *525 Respondent cites Estate of Doherty v. Commissioner, 95 T.C. 446 (1990), for the proposition that providing for a successor trustee in the trust instrument violates the requirement that the surviving spouse have the power to appoint in all events. Estate of Doherty is distinguishable on the basis that the trust instrument in that case determined the specific person who would be the successor trustee. In this case, Mrs. Wilson has complete discretion to determine the successor trustee. As discussed, under both section 20.2041-1(b)(1), Estate Tax Regs., and section 25.2514-1(b)(1), Gift Tax Regs., the trustee's power to appoint is attributed to Mrs. Wilson by virtue of her ability to dismiss and appoint successor trustees. This is because she, for all practical purposes, can control the actions of the trustee by removing any uncooperative trustee and appointing one who will act as she directs. This rationale is equally applicable in the context of whether the surviving spouse has the power to appoint in all events under section 2056. When the surviving spouse has the power to remove the trustee and appoint anyone else, including herself, the trustee's powers are *526 properly attributed to her. Under these circumstances, if the trustee has the power to appoint in all events, the requirement that the surviving spouse have the power to appoint corpus in all events is satisfied. [11] This result is consistent with both the spirit and the technical requirements of section 2056(b)(5). *527 Respondent argues that the provisions for a successor trustee indicate that the power to appoint is shared with someone else and therefore does not qualify. Respondent's regulations provide: only powers in other persons which are in opposition to that of the surviving spouse will cause a portion of the interest to fail to satisfy the condition set forth in paragraph (a)(5) of this section. Thus, a power in a trustee to distribute corpus to or for the benefit of a surviving spouse will not disqualify the trust. * * * [Sec. 20.2056(b)-5(j), Estate Tax Regs.] Given decedent's intent that Mrs. Wilson be able to terminate the trust during her life and the fact that she was to serve as trustee or have the ability to appoint and replace any successor trustee, we do not believe that Mrs. Wilson shared the power to appoint with anyone holding a power which was in opposition to her. We hold that the trust satisfies the requirements of section 2056(b)(5). The portion of the trust attributable to decedent's contribution, which is includable in his gross estate, is deductible under *528 section 2056(a). Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The children, as beneficiaries after Mrs. Wilson's death, "may" retain the trust for administration purposes.↩
3. Sec. 2056(b)(1) provides: (1) General rule. -- Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest -- (A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B)) -- ↩
4. Respondent acknowledges that the powers and duties of the trustee are measured by the terms of the instrument.↩
5. See Estate of Mittleman v. Commissioner, 522 F.2d 132, 141 (D.C. Cir. 1975), revg. T.C. Memo. 1973-112↩, involving the interpretation of an instrument under D.C. law. 6. We disagree with respondent that par. (j) of the duties, responsibilities, and powers document eliminates any ground that Mrs. Wilson had to force a successor trustee to distribute income. This provision deals with distribution of trust income and corpus, not withholding it. In any event, if a successor trustee refused to distribute income to Mrs. Wilson, she could simply remove that trustee pursuant to par. 4 of the trust.↩
7. This is not to suggest that just because the underlying purpose of the statute is satisfied, the taxpayer need not comply with the technical requirements of sec. 2056(b)(5). Jackson v. United States, 376 U.S. 503, 509-510 (1964); Estate of Meeske v. Commissioner, 72 T.C. 73, 77-78 (1979), affd. sub nom. Estate of Laurin v. Commissioner, 645 F.2d 8 (6th Cir. 1981); cf. Estate of Smith v. Commissioner, 565 F.2d 455, 459 (7th Cir. 1977), affg. 66 T.C. 415↩ (1976).
8. Sec. 2514(b) provides: (b) Powers Created After October 21, 1942. -- The exercise or release of a general power of appointment created after October 21, 1942, shall be deemed a transfer of property by the individual possessing such power. ↩
9. Sec. 2041(a) provides: (a) In General. -- The value of the gross estate shall include the value of all property -- * * * (2) Powers Created After October 21, 1942. -- To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942, or with respect to which the decedent has at any time exercised or released such a power of appointment by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038↩, inclusive.* * * 10. Sec. 25.2514-1(b)(1), Gift Tax Regs., employs essentially the same language.↩
11. We note that our determination that Mrs. Wilson has the power to appoint corpus to herself in all events is consistent with the trust instrument which bears the title "Revocable Trust". See Estate of Ellingson v. Commissioner, 964 F.2d 959↩ (9th Cir. 1992) (stating "The first clue in determining their [the settlors'] intent with respect to the * * * trust which is at issue is garnered by taking note of the name they chose for it"). Whether acting in her capacity as trustee, holder of the power to appoint and remove the trustee, or holder of the power of revocation, the practical effect is the same in that she has the ability to remove all corpus from the trust and give it to herself. Respondent concedes that "If the Trust were entirely revocable, the estate would be entitled to a marital deduction under [sec.] * * *2056(a)."